THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SHARIFF G. BANKS, Defendant-Appellant.

Second District   No. 2—95—0476

Opinion filed March 27, 1997.

G. Joseph Weller and Steven E. Wiltgen, both of State Appellate Defender's Office, and Vincent C. Argento and Linda A. Johnson, both of Argento & Klein, Ltd., both of Elgin, for appellant.

Michael J. Waller, State's Attorney, of Waukegan (William L. Browers and Lawrence M. Bauer, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE THOMAS delivered the opinion of the court:

The defendant, Shariff G. Banks, was indicted by a grand jury with five counts of first degree murder (720 ILCS 5/9—1(a)(1), (a)(2), (a)(3) (West 1994)) in connection with the shooting death of Mary Davis. Following a jury trial in the circuit court of Lake County, the defendant was found guilty on three of those counts and sentenced to 50 years in prison. We affirm.

## FACTS

The facts relevant to our decision are as follows. The defendant was arrested and charged with first degree murder on July 22, 1994. On August 17, 1994, he was indicted on five counts of first degree murder. Prior to trial, the defendant moved to suppress oral, written, and videotaped statements he made to the police subsequent to his arrest. Following an evidentiary hearing on the motion, the motion was denied. The case proceeded to a jury trial in October 1994.

At trial, Mark Tkadletz, a Waukegan police officer, testified that he was working on July 20, 1994. During his shift, he received a call concerning shots fired in the 1600 block of Lyons Court, in Waukegan, Illinois. While en route to that location, he was informed of a possible accident in the 1700 block of Lyons Court. Upon arriving at his destination, he observed that a vehicle had crashed into a house at 1713 Lyons Court. When he approached the vehicle, he observed a female with a bleeding head wound slumped over in the backseat of the vehicle.

Lakesha Morgan testified that she was in the eighth grade and attended school with her friend, Mary Davis. On the evening of July 20, 1994, she was riding with Davis in a gray, four-door vehicle being driven by Daryl Johnson. Johnson was a member of the Gangster Disciples gang. At some point, Davis asked to be taken to her home on Lyons Court. Morgan was seated in the front passenger seat, and Davis was seated in the backseat on the driver's side. As they traveled on Lyons Court, another vehicle crashed into the front of Johnson's vehicle. According to Morgan, she heard shots from the front. Johnson put his vehicle into reverse, and it hit another vehicle from behind. She then heard shots from the rear. Johnson turned the wheel sharply and his vehicle hit a house. Johnson and Morgan ran from the vehicle. Morgan testified that she never saw Johnson put his hands out the window of the vehicle and never saw a gun in the vehicle.

The State called a series of witnesses who testified as to what they heard or observed in the vicinity on July 20, 1994. Viola Banks testified that sometime between 10:30 p.m. and 11 p.m. she heard shots and then a vehicle crashed into her house at 1713 Lyons Court. Maria Henderson, who resided at 1720 Lyons Court, testified that around 10:30 p.m. she heard shots and observed a vehicle crash into her neighbor's house. Herman Ray, who resided at 1526 Lyons Court, testified that he heard shots, screeching tires, the roar of car engines, and a crash. Nelson Tate, of 1712 Lyons Court, testified that he heard shots, tires screeching, and a crash. Robert Chambers, who resided at 1618 Lyons Court, testified that he heard a bang and shots and then

observed a vehicle back into another. Valerie Cooper, who resided at 1602 Lyons Court, testified that she was beginning to back out of her driveway at 10:45 p.m. when a gray vehicle drove by. She heard shots and observed the same gray vehicle backing up past her driveway. She did not see anybody with his hands out the window of the gray vehicle or anything sticking out the window.

Kanesha Davis, the older sister of the 15-year-old victim, next testified. She had been riding in Johnson's vehicle earlier in the evening on July 20, 1994. When she was dropped off at a friend's house, her sister was still in the vehicle. As she later walked toward her home at 1522 Lyons Court, she heard a screech and shots.

Lonnie Brown, a North Chicago police officer, testified that he was working the midnight shift on July 21, 1994. During his shift, he received a call concerning a drive-by shooting. In responding to the call, he observed a green vehicle matching the description of the vehicle involved in the shooting. He observed the passenger of the vehicle extend an arm out of the vehicle and fire shots at a pedestrian. He followed the vehicle, which eventually lost control and hit a telephone pole. Four subjects ran from the vehicle. In conducting a search of the area, Brown found a semiautomatic pistol loaded with what appeared to be a .380-caliber round of ammunition.

Donald Meadie, a Waukegan police officer, testified that he stopped a vehicle on July 22, 1994. The vehicle had no license plates and was occupied by two black males. One of the occupants of the vehicle was the defendant. Both occupants were taken to the police station.

Dennis Cobb, a Waukegan police officer, testified that he was directed to 1713 Lyons Court on July 20, 1994. As an evidence technician, he examined the gray vehicle that hit the house. He observed a bullet hole in the front fender behind the wheel well of the driver's side area, a bullet hole to the left center of the back door of the driver's side, and a dent just below the driver's side door handle where a bullet had hit and ricocheted. He recovered the bullet that caused the hole in the front fender and a bullet that fell to the ground when he opened the rear driver's side door. Upon examining the passenger side of the vehicle, he observed bloodstains in the backseat and a bullet hole in the front-seat headrest. According to Cobb, the bullets that hit the front fender and the back door of the driver's side came from the front and somewhat to the side of the vehicle. The bullet hole that went through the headrest also indicated the bullet came from the front and somewhat to the side of the vehicle.

James McCarthy, a Waukegan police officer, testified that the gun recovered from the green vehicle on July 21, 1994, was a .380-

caliber automatic handgun. He retrieved two rounds of live ammunition from the gun. McCarthy also testified that he attended the autopsy of the victim, where a projectile was recovered from her head wound and turned over to him.

Robert Kerkorian, a Waukegan police detective, testified that he interviewed the defendant at the police station on July 22, 1994. The defendant told him that he had been shot in the chest with a shotgun during the previous week. He believed he had been shot by Johnson, a member of the Gangster Disciples gang. The defendant was a member of the Vice Lords gang. On July 20, 1994, the defendant was with some friends when they observed a gray vehicle being driven by Johnson. The defendant and his friends got into two vehicles they had rented from a "dope fiend" and followed. He was in the front passenger seat of a brown vehicle, following behind Johnson's vehicle as it traveled on Lyons Court. Some of the defendant's friends were in a green vehicle, which turned down another street. The gray vehicle eventually came up on the green vehicle. The vehicles stopped briefly, and the gray vehicle went into reverse and struck the brown vehicle. According to the defendant, Johnson pointed something out the window. The defendant then took a .38-caliber revolver in his possession and fired approximately five shots from the brown vehicle at the gray vehicle as it passed by the brown vehicle in reverse. The defendant told Kerkorian that he was not trying to kill or hurt anybody and did not see Davis in the backseat. The defendant later turned the weapon over to a friend and never saw it again.

The parties entered stipulations into evidence. William Wilson, a forensic scientist with the Northern Illinois Police Crime Laboratory, would testify concerning paint samples collected from the green, gray, and brown vehicles. Robert Wilson, a firearms examiner with the Northern Illinois Police Crime Laboratory, would testify that he examined the bullet recovered from Davis and two bullets recovered from the gray vehicle. He would further testify that the bullets were .38 or .357 caliber and that the bullets were fired from the same gun but not from the .380-caliber gun recovered. Dr. John Teggatz, a forensic pathologist, would testify that he performed the autopsy on Davis and that she died of cerebral lacerations and contusions caused by a gunshot wound to the head. The defense presented no additional evidence.

The jury found the defendant guilty of first degree murder as charged in count I and of first degree felony murder as charged in counts IV and V of the indictment. The defendant was later sentenced to 50 years' imprisonment. He filed a timely appeal.

## ANALYSIS

On appeal, the defendant raises three issues for our review. He contends that (1) he was denied his constitutional right to a fair trial as a result of trial court errors with respect to jury instructions; (2) he was improperly convicted of first degree felony murder premised on mob action; and (3) the first degree murder convictions must be reversed because the State failed to prove him guilty beyond a reasonable doubt.

### I. Jury Instructions

The defendant initially contends that he was denied his constitutional right to a fair trial as a result of trial court errors with respect to jury instructions. These alleged errors include: (1) the issuance of too many definitional and issues instructions relating to first degree murder; (2) improper instruction under the felony murder statute; and (3) the failure to render all verdict forms to the jury.

■ It is well established that every litigant is entitled to have the jury instructed as to the law governing the case. *Malek v. Lederle Laboratories*, 125 Ill. App. 3d 870, 872 (1984). The instructions must be sufficiently clear so as not to confuse or mislead the jury. *Malek*, 125 Ill. App. 3d at 872. According to Supreme Court Rule 451(a) (134 Ill. 2d R. 451(a)), juries in criminal cases must be instructed pursuant to the Illinois Pattern Jury Instructions, Criminal (IPI Criminal), unless the court determines that the particular instruction does not accurately state the law. See *People v. Haywood*, 82 Ill. 2d 540, 545 (1980); *People v. Testin*, 260 Ill. App. 3d 224, 230 (1994). Absent a clear abuse of discretion, a trial court's determination of the form in which an instruction is given will not be disturbed on review. *People v. Curtis*, 262 Ill. App. 3d 876, 890 (1994).

■ We first examine the alleged issuance of too many definitional and issues instructions relating to first degree murder.

The case at hand proceeded to jury trial in October 1994. At that time, the definitional and issues instructions relating to first degree murder were set forth in IPI Criminal, as Nos. 7.01A and 7.02A, respectively. Illinois Pattern Jury Instructions, Criminal, Nos. 7.01A, 7.02A (3d ed. 1992) (IPI Criminal 3d). In instructing the jury, the trial judge gave *two* definitional and *two* issues instructions, over defense counsel's objections. The defendant contends that the trial judge should have rendered only *one* definitional and *one* issues instruction. We agree.

The language of IPI Criminal 3d Nos. 7.01A and 7.02A suggests the giving of one definitional and one issues instruction relating to first degree murder, regardless of how many counts of first degree

murder with which a defendant is charged. IPI Criminal 3d Nos. 7.01A, 7.02A. Citing *People v. Johnson*, 250 Ill. App. 3d 887 (1993), the Committee Note to IPI Criminal 3d No. 7.02A expressly states that only one issues instruction should be given to the jury to explain the issues of first degree murder and that separate issues instructions for each of the different ways first degree murder can be charged under sections 9—1(a)(1) through (a)(4) of the Criminal Code of 1961 (Code) (720 ILCS 5/9—1(a)(1) through (a)(4) (West 1994)) are not to be given. IPI Criminal 3d No. 7.02A, Committee Note, at 55 (Supp. 1996). While committee comments are not the law, the trial court is allowed to deviate from the suggested instructions and format only where necessary to conform to unusual facts or new law (*People v. Whitaker*, 263 Ill. App. 3d 92, 98 (1994)), neither of which is present here.

In *Johnson*, the defendant argued that the trial court erred in giving the jury five instructions on the issues of first degree murder, one for each count of murder. The Appellate Court, Fourth District, agreed that only one issues instruction should have been provided to the jury. However, it found that the defendant failed to preserve the issue for review and the error did not amount to plain error. *Johnson*, 250 Ill. App. 3d at 903-04. The plain error exception to the waiver rule permits a reviewing court to consider issues waived for the purposes of review when the evidence in a criminal case is closely balanced or the error is so fundamental and of such magnitude that the accused was denied a fair trial. *People v. Lucas*, 151 Ill. 2d 461, 482 (1992). The *Johnson* court did not find the evidence to be closely balanced or to have denied the accused a fair trial. *Johnson*, 250 Ill. App. 3d at 905.

Accordingly, we find the trial court erred in giving multiple definitional and issues instructions of first degree murder. Unlike in *Johnson*, we find no waiver because the defendant objected to the instructions given. As in *Johnson*, however, we find the error in rendering multiple instructions to have been harmless because the error did not deny the defendant a fair trial. See *Johnson*, 250 Ill. App. 3d at 905.

■ We next examine the alleged improper instruction under the felony murder statute.

In the case *sub judice*, the defendant was charged with two counts of first degree murder under the felony murder statute. 720 ILCS 5/9—1(a)(3) (West 1994). The forcible felonies alleged in the indictment were those of attempted first degree murder of Daryl Johnson (count IV) and mob action (count V). IPI Criminal No. 24—25.10 addresses when a forcible felon is not entitled to use force.

IPI Criminal 2d No. 24—25.10 (2d ed. 1981) (IPI Criminal 2d) provides:

> "A person is not justified in the use of force if he is [(attempting to commit) (committing) (escaping after the commission of)] a forcible felony."

The Committee Note to that version of No. 24—25.10 expressly states that the trial court is to give an instruction defining "forcible felony." IPI Criminal 2d No. 24—25.10, Committee Note, at 557.

The defendant contends that the trial court erred in its rendering of jury instructions concerning IPI Criminal No. 24—25.10 because the instructions improperly replaced the words "forcible felony" with "mob action" and with "attempted first degree murder of Daryl Johnson." Citing *People v. Payne*, 194 Ill. App. 3d 238 (1990), and *People v. Fernandez*, 240 Ill. App. 3d 518 (1992), the defendant also contends that the trial court erred in failing to define "forcible felony."

The defendant's contentions are without merit because he erroneously relies on the language of IPI Criminal No. 24—25.10 found in the *second* edition of IPI Criminal. At the time of the October 1994 trial, the jury should have been instructed, and was instructed, pursuant to the *third* edition of IPI Criminal No. 24—25.10.

IPI Criminal 3d No. 24—25.10 reads as follows:

> "A person is not justified in the use of force if he is [(attempting to commit) (committing) (escaping after the commission of)] _____."

The Committee Note to IPI Criminal 3d No. 24—25.10 expressly states that the trial court is to insert in the blank the forcible felony committed or attempted. It does *not* require the giving of a definition of "forcible felony." IPI Criminal 3d No. 24—25.10, Committee Note, at 320.

Because the instruction that was given accurately followed the current IPI Criminal version in effect at the time of trial, we conclude that the trial court gave a proper instruction. See *Curtis*, 262 Ill. App. 3d at 890. The trial court properly inserted the terms "first degree murder" and "mob action" and need not have given a definition of "forcible felony."

■ Finally, we examine the alleged failure to render all verdict forms to the jury.

The defendant contends that the jury should have received 10 verdict forms but that there are only 8 such forms in the record. He argues that the two missing verdict forms, both relating to involuntary manslaughter, precluded the jury from finding him guilty of a lesser offense. Citing *People v. Cadwallader*, 181 Ill. App. 3d 488 (1989), he demands a new trial.

The State asserts at the outset that this issue has been waived because the defendant failed to preserve the issue by raising it in his motion for a new trial. As a general rule, the failure to raise an issue in a written motion for a new trial results in a waiver of that issue on appeal. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). Having reviewed the defendant's motion for a new trial, we agree with the State that the defendant failed to raise this issue below. Accordingly, we deem this issue waived. Had we not done so, we would, nevertheless, resolve the issue in favor of the State.

Upon careful review, we agree with the defendant that the record contains only 8 of the 10 verdict forms. However, we disagree that both of the missing verdict forms relate to involuntary manslaughter. One of the missing verdict forms offered a finding of guilt as to involuntary manslaughter during an attempt to kill Daryl Johnson, while the other offered a finding of not guilty of first degree murder during the commission of mob action. We also disagree that a new trial is warranted under *Cadwallader*. The defendant cites that case as requiring a new trial where there is an improper reading of jury instructions. *Cadwallader* is inapplicable to the case at hand because the case at hand does not present a question concerning the issuance of inadequate instructions. Rather, the question is whether the jury received all the necessary verdict forms.

Although we have stated that the record contains only 8 of the 10 verdict forms, we presume that the jury received all 10 forms. See *People v. Jones*, 196 Ill. App. 3d 937, 960 (1990) ("where a record is incomplete, or is silent, a reviewing court will invoke the presumption that the trial court ruled or acted correctly"). Having carefully reviewed the entire record, including the reports of proceedings, we note that at the close of the evidence the trial judge rendered a form of verdict instruction to the jury that referred to all 10 verdict forms. The trial judge also then read each of the 10 verdict forms into the record. In light of these findings, we conclude that the trial court rendered all 10 verdict forms to the jury.

■ The defendant also argues that the cumulative effect of the errors cited with respect to jury instructions constitutes reversible error. The resolution of the general argument that the cumulative effect of alleged errors warrants a reversal depends upon the court's evaluation of the individual errors. In examining each instance of alleged error with respect to the jury instructions, we found only one error. While it is true that trial errors may have a cumulative effect when considered together (*People v. Albanese*, 102 Ill. 2d 54, 83 (1984)), one error cannot amount to cumulative error.

## II. Felony Murder Premised on Mob Action

The second contention of the defendant on appeal is that he was improperly convicted of first degree felony murder premised on mob action.

In the case *sub judice*, the defendant was charged with two counts of first degree murder under the felony murder statute. 720 ILCS 5/9—1(a)(3) (West 1994). The felony murder statute provides:

"(a) A person who kills an individual without lawful justification commits first degree murder if, in performing the acts which cause the death:

\* \* \*

(3) he is attempting or committing a forcible felony other than second degree murder." 720 ILCS 5/9—1(a)(3) (West 1994).

Forcible felony is defined in section 2—8 of the Code as follows:

" 'Forcible felony' means treason, first degree murder, second degree murder, aggravated criminal sexual assault, criminal sexual assault, robbery, burglary, residential burglary, aggravated arson, arson, aggravated kidnaping, kidnaping, aggravated battery resulting in great bodily harm or permanent disability or disfigurement and any other felony which involves the use or threat of physical force or violence against any individual." 720 ILCS 5/2—8 (West 1994).

One of the forcible felonies alleged in the defendant's indictment was that of mob action (count V) (720 ILCS 5/25—1(a)(1) (West 1994)).

The defendant initially argues that mob action cannot serve as the predicate felony for felony murder because (1) mob action is not specifically listed among the forcible felonies in section 2—8 of the Code; and (2) mob action under section 25—1(a)(1) of the Code runs to a disturbance of the public peace whereas a forcible felony concerns violence to an individual. We are not persuaded by either of these arguments.

■ Concerning the first argument, while mob action is not specifically listed among the forcible felonies in section 2—8 of the Code (720 ILCS 5/2—8 (West 1994)), the definition of forcible felony is not limited to those listed. Rather, the definition expressly includes "any other felony which involves the use or threat of physical force or violence against any individual." 720 ILCS 5/2—8 (West 1994).

It is worth noting that, even if we had not found mob action to be an appropriate predicate felony for felony murder, the jury returned a finding of guilt on three counts of first degree murder. First degree murder is unquestionably a proper predicate forcible felony. See 720 ILCS 5/2—8 (West 1994).

■ Concerning the second argument, although section 25—1(a)(1)

of the mob action statute refers to "[t]he use of force or violence *disturbing the public peace*" (emphasis added) (720 ILCS 5/25—1(a)(1) (West 1994)), section 25—1(a)(1) has been used to charge defendants with mob action that involved violence against an individual. See *People v. Fauber*, 266 Ill. App. 3d 381 (1994). In *Fauber*, the defendant was charged with mob action under section 25—1(a)(1) of the Code, as was the defendant in this case. There, the defendant and at least one other attacked a fellow high school student. The *Fauber* court affirmed the jury's conviction of the defendant for mob action. In addition, section 25—1(d) of the mob action statute contemplates mob action as involving "violence *** *to the person* or property of another." (Emphasis added.) 720 ILCS 5/25—1(d) (West 1994). Moreover, IPI Criminal 3d No. 19.03 defines mob action as requiring that "one of the participants in the mob action violently inflicts injury to the [(person) (property)] of another." IPI Criminal 3d No. 19.03.

■ The defendant next argues that mob action requires intent or knowledge, which was not present here.

Pursuant to *People v. Land*, 169 Ill. App. 3d 342, 356-57 (1988), the application of the felony murder rule is limited to those predicate felonies with an intentional or knowing state-of-mind requirement. Here, the defendant argues that the events at issue did not involve an intentional or knowing state of mind. He claims that the shots he fired in the direction of the gray vehicle were strictly the result of his feeling the need to defend himself once the gray vehicle backed up into his vehicle and he observed Johnson point something out the window. We find that the jury could have found the evidence to support a contrary conclusion. The defendant told the police that he had been shot in the chest with a shotgun during the previous week and that he believed the shooter was Johnson. When the defendant thereafter saw a gray vehicle being driven by Johnson, he and some friends followed after Johnson in two separate vehicles. Eventually, the green and brown vehicles sandwiched the gray vehicle. The gray vehicle was rammed and fired upon from the direction of the green vehicle. Only after this sequence of events did the gray vehicle back into the defendant's vehicle. Under these circumstances, a jury could have concluded that the attack on Johnson, which led to the death of Davis, was premeditated in retaliation for the earlier shooting of the defendant and was not merely a reckless act.

### III. Guilt Beyond a Reasonable Doubt

The third contention of the defendant on appeal is that the first degree murder convictions must be reversed because the State failed to prove him guilty beyond a reasonable doubt.

■ A conviction must be based upon proof beyond a reasonable doubt. *People v. Foules*, 258 Ill. App. 3d 645, 653 (1993). The reviewing court's duty is not to ask itself whether it believes the evidence establishes guilt, but whether the evidence viewed in a light most favorable to the prosecution would allow any rational trier of fact to find the essential elements of the crime proved beyond a reasonable doubt. *Foules*, 258 Ill. App. 3d at 653. A reviewing court may not substitute its judgment for that of the trier of fact on questions involving the weight of the evidence or the credibility of the witnesses. *People v. Winfield*, 113 Ill. App. 3d 818, 826 (1983). The reversal of a conviction is required only where the defendant can show that the evidence is so unsatisfactory or improbable as to create a reasonable doubt of the defendant's guilt. *People v. Murray*, 194 Ill. App. 3d 653, 656 (1990).

The defendant first argues that his first degree murder conviction should be reversed because the evidence showed he was acting in self-defense. Alternatively, he claims that the conviction should be reduced to second degree murder.

■ The difference between a justified killing under self-defense and one not justified, amounting to second degree murder, is that in the former instance the belief that the use of force which is intended to cause death or great bodily harm is reasonable under the circumstances (720 ILCS 5/7—1 (West 1994); *People v. Turcios*, 228 Ill. App. 3d 583, 594 (1992)), and in the latter the belief is unreasonable (720 ILCS 5/9—2(a)(2) (West 1994); see *People v. Ellis*, 107 Ill. App. 3d 603, 611 (1982)).

Although he did not testify at trial, the defendant maintains that his statements to the police should have led the jury to find that he possessed the belief that the use of force was necessary. He told the police that he had been shot earlier by a person he believed to be Johnson. Only after being struck by Johnson's vehicle and seeing Johnson put something out the window did the defendant fear being shot again and resort to firing his gun in Johnson's direction. The defendant argues that the jury simply had to assess whether his belief that force was necessary was reasonable, in which case it would amount to self-defense, or unreasonable, in which case it would mandate a finding of a lesser offense than first degree murder— second degree murder. See *Ellis*, 107 Ill. App. 3d at 611-12. Under the circumstances of this case, we find the defendant's arguments to be without merit.

■ In the present action, the jury was instructed on self-defense and second degree murder. Nevertheless, the jury found the defendant guilty of three counts of first degree murder. In doing so, it

plainly rejected the self-defense and second degree murder options. It is the function of the jury to determine the credibility of the witnesses and assess the weight to be afforded evidence, and we may not lightly set aside such findings, nor substitute our own judgment for that of the jury. *People v. Gomez*, 215 Ill. App. 3d 208, 215 (1991). Here, the jury did not find the defendant's theory that force was necessary to be credible. We will not substitute our judgment for that of the jury. In fact, the evidence supports the jury's determination that force was unnecessary and that the defendant possessed an intent to kill. The defendant told the police that he and his friends followed in pursuit of the gray vehicle being driven by Johnson. The defendant never stated that he saw that Johnson had a gun or that Johnson fired shots. His statements that force was necessary were contradicted by Morgan and Cooper. Morgan testified that Johnson never stuck his arm out the window and did not have a gun. Cooper testified that she did not see anyone stick anything out of the gray vehicle.

The defendant next argues that the State failed to present sufficient corroboration to his statements to the police to sustain a conviction of the murder of Davis based on those statements.

■ The State asserts at the outset that this issue has been waived because the defendant failed to preserve the issue by raising it in his motion for a new trial. The failure to raise an issue in a written motion for a new trial results in a waiver of that issue on appeal. *Enoch*, 122 Ill. 2d at 186. Having reviewed the defendant's motion for a new trial, we note that the defendant contends that he was not proved guilty beyond a reasonable doubt. While the issue at hand is more narrow, it runs to whether the defendant was found guilty beyond a reasonable doubt. Accordingly, we find no waiver.

■ In order for a conviction based on a confession to be sustained, the confession must be corroborated. *People v. Willingham*, 89 Ill. 2d 352, 358-59 (1982). The corroboration requirement is satisfied by proof of the *corpus delicti*. *Willingham*, 89 Ill. 2d at 359; *In re D.A.*, 114 Ill. App. 3d 522, 524 (1983).

■ Proof of guilt for a criminal offense may be divided conceptually into proof that an injury or loss occurred, that the cause of the loss was criminal in nature, and that the accused was the offender. *People v. Furby*, 138 Ill. 2d 434, 445-46 (1990). The first two components—the occurrence of the injury or loss and its causation by criminal conduct—are termed the *corpus delicti*; the identity of the accused as the offender, the ultimate issue, is not considered part of the *corpus delicti*. *Furby*, 138 Ill. 2d at 446.

■ In the instant matter, we find the evidence sufficiently established the *corpus delicti* of murder. The evidence plainly shows

that an injury occurred: the shooting and subsequent death of Davis. The evidence likewise shows that someone was criminally responsible for the shooting that led to her death.

The defendant contends that he could not have been the shooter because (1) the bullets found in the gray vehicle came from the front of that vehicle and not from the rear, where he was in the brown vehicle; and (2) although he told the police that he possessed and fired a .38-caliber revolver, the deadly bullet was fired from either a .38- or .357-caliber weapon so the bullet may not have been fired from his weapon.

The defendant mischaracterizes the evidence concerning the pathway of the bullets found in the gray vehicle. Officer Cobb testified that the two bullets found in the gray vehicle came from the front and somewhat to the side of the vehicle, as did the bullet that went through the headrest. He gave no testimony concerning the trajectory of the bullet that was later recovered from the victim's head.

Furthermore, the deadly bullet could have been fired from the defendant's weapon. The parties stipulated that the bullet retrieved from the victim's head was fired from a .38- or .357-caliber gun. The only gun recovered by the police was a .380 caliber, which could not have been the murder weapon. The defendant's gun, a .38 caliber, was never recovered but could have been the murder weapon.

The corroborating evidence presented could be considered together with the defendant's statements that he fired approximately five shots at the gray vehicle as it passed with his .38-caliber revolver. Together, the jury could have found the defendant to have been the murderer.

██ The defendant also argues that the jury's confusion, as evidenced by its question to the trial judge during deliberations, was evidence of reasonable doubt.

The State asserts that this issue has been waived because the defendant failed to preserve the issue by raising it in his motion for a new trial. See *Enoch*, 122 Ill. 2d at 186. Having reviewed the defendant's motion for a new trial, we note that the defendant contends that he was not proved guilty beyond a reasonable doubt. Again, while the issue at hand is more narrow, it runs to whether the defendant was found guilty beyond a reasonable doubt. Accordingly, we find no waiver.

During deliberations, the jury directed a note to the trial judge which read as follows:

"Do we have to accept a confession as 'absolute' proof that the defendant's gun fired the bullet that killed Mary or can we find resonable [*sic*] doubt for which gun was responsible?"

The trial judge responded with a note stating:

> "You have received all the evidence and instructions on the law. Please continue deliberating."

A trial court's decision to answer or refrain from answering a question from the jury will not be disturbed absent an abuse of discretion. *People v. Landwer*, 279 Ill. App. 3d 306, 314 (1996), citing *People v. Reid*, 136 Ill. 2d 27, 38-39 (1990). A trial judge may properly decline to answer jurors' questions when the instructions are legally correct and understandable, further instruction would mislead the jurors, jurors raise questions of fact, or an answer or explanation by the court would likely direct a verdict. *People v. Childs*, 159 Ill. 2d 217, 228 (1994). However, jurors are entitled to have their questions answered. Thus, the general rule is that the trial court has a duty to provide instruction to the jury where it has posed an explicit question or requested clarification on a point of law arising from facts about which there is doubt or confusion. *Childs*, 159 Ill. 2d at 228-29.

As to the defendant's argument that the note evidences jury confusion such that it could not possibly find him guilty beyond a reasonable doubt, we find such an argument to be speculative. The note could as easily have evidenced the jury's careful consideration of all the evidence leading to its findings of guilt.

In sum, we find that a rational trier of fact could have found the defendant guilty of first degree murder beyond a reasonable doubt. Consequently, we affirm the defendant's convictions.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the circuit court of Lake County.

Affirmed.

INGLIS and HUTCHINSON, JJ., concur.