THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DESEAN McCARTY, Defendant-Appellant.

First District (5th Division)    No. 1—98—4279

Opinion filed April 26, 2002.—Rehearing denied June 6, 2002.

Rita A. Fry, Public Defender, of Chicago (Pamela Pfrang, Assistant Public Defender, of counsel), for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Jon J. Walters, and Ash L. Sawkar, Assistant State's Attorneys, of counsel), for the People.

JUSTICE QUINN delivered the opinion of the court:

Defendant, Desean McCarty, was charged by indictment with three counts of first-degree murder (for the murder of one individual), one count of aggravated possession of a stolen motor vehicle and one count of aggravated fleeing or attempting to elude a police officer. The State later added a fourth count of first-degree murder. Following a bench trial, defendant was found guilty of one count of felony murder and sentenced to 40 years' imprisonment. Defendant now timely appeals.

On appeal, defendant argues that his conviction must be reversed because: (1) aggravated possession of a stolen motor vehicle is not a forcible felony; (2) he is excluded from culpability under a plain reading of the felony murder statute; (3) the State failed to prove proximate cause; (4) the trial judge's failure to enter a finding of guilt on the aggravated-possession-of-a-stolen-motor-vehicle count constitutes an implied acquittal on the predicate felony and/or the State failed to prove an essential element of the aggravated-possession-of-a-stolen-motor-vehicle offense; and (5) his sentence was excessive.

For the following reasons, we affirm.

I. BACKGROUND

The pertinent facts of the case involve the events that occurred the evening of September 20, 1997. Renell Brown testified that on Thursday, September 18, 1997, she allowed her boyfriend, Andre Griffin, to use her automobile. Brown testified that she gave Griffin the maroon Chevrolet Caprice to drive it to Harvey, Illinois, to be repaired. Brown stated that Griffin had permission to use the car "for a couple of hours."

Andre Griffin testified that on September 18, 1997, he drove Brown's car to Harvey and had some work done on it. Griffin testified

that someone had attempted to steal the car on a previous occasion and therefore the steering column was peeled and the car could only be started with a screw driver. Griffin stated that after the repairs were finished, he drove the car to a housing project on 154th Street in Harvey. Griffin testified that he rented Brown's car out to defendant in exchange for drugs. Griffin stated that defendant had permission to use the car for only three hours; however, defendant never returned. Griffin testified that two days later, defendant returned to the housing projects in the Caprice. Griffin requested that defendant return the car. Griffin stated that defendant said he was going to park the car behind the building, but he "punched the accelerator and took off."

Larry Mason testified that on Saturday, September 20, 1997, defendant pulled up in the maroon Caprice and asked if anyone wanted to buy the car. Mason noticed the steering column was peeled, and someone in the group told him "that's a stolen car, man, get that off our block."

Tia Brewton testified that on September 20, 1997, she was at her home at 84 East 155th Street, Harvey, Illinois. Brewton testified that at around 7:30 p.m. that night she was sitting on her front porch and heard sirens. Brewton walked to the end of her sidewalk and looked down the street. Brewton saw two men running across the street. Brewton stated that the first man made it across the street but the second man was hit by a police car. Brewton testified that when she first saw the men running, she noticed the police car lights coming "awfully fast."

James Sanders testified that on September 20, 1997, he was working at the gas station at 159th and Wood. Sanders testified that he heard sirens and saw a red Chevy being chased by a Markham police car. Sanders heard the sirens and observed the emergency lights flashing on the police car. Sanders testified that it appeared that the cars were traveling faster than the speed limit. He characterized the incident as a "high speed chase."

Officer Brogdon testified that on the evening of September 20, 1997, he was on duty as a patrol officer for the Harvey police department. While monitoring his radio that evening, Brogdon heard a Markham police unit advise his department that he had a vehicle refusing to stop. Brogdon testified that the next call on the radio stated that the unit was getting into a "10-80," a high-speed chase. Brogdon testified that he was near the area so he proceeded to 159th and Ashland to give assistance to the Markham unit. While traveling down 154th Street, his car windows were down and he heard engines revving and tires squealing.

Brogdon stated that as he proceeded east down 155th Street he

heard the Markham police officer state over the radio that he was "bailing out." Brogdon testified that this meant the officer must have exited the vehicle and the car chase had become a foot chase. As he continued east down 155th Street, Brogdon stated that he saw a male running northbound across 155th Street. Brogdon gave the suspect's physical description and direction of travel over the radio as the man was passing across the street. Brogdon began to slow his car down, in preparation to "bail out" of the car and proceed on a foot chase, when an impact happened. Brogdon stated that he thought he had run over a brick. When Brogdon exited the car, he noticed damage to the rear driver side quarter panel, and as he walked to the back of the car he saw some black trousers under his police car. He then called for assistance from an ambulance, a tow truck and his sergeant. Brogdon testified that he later learned that the person he hit was Officer Sean Laura from the Markham police department.

The parties stipulated that if Thamrong Chira, Cook County medical examiner, were called to testify he would express an opinion to a reasonable degree of scientific and medical certainty that Officer Sean Laura died of multiple injuries sustained as a pedestrian that was struck by an automobile.

Detective James Knapp testified that after receiving information regarding the accident, he began canvassing the area for defendant. Knapp stated that on September 21, 1997, defendant was arrested at approximately 7:30 p.m. After defendant was read his rights, defendant went with Knapp to show him the streets that he drove on in the pursuit from the previous day. Knapp testified that the defendant indicated that the patrol car was following him with its police lights activated. Knapp testified that the defendant showed him where the Caprice stopped and he got out of the car and began to run between the houses.

Assistant State's Attorney John Coyne testified that on September 22, 1997, at approximately 2:30 p.m., he spoke with defendant at the Harvey police station. After advising defendant of his *Miranda* rights, defendant provided Coyne with a statement. Coyne testified that he wrote out defendant's statement and reviewed the statement with the defendant. Defendant made corrections to the statement and initialed and signed every page. The pertinent portions of defendant's statement read as follows:

> "On Saturday, September 20th, 1997, I got a Chevy Caprice from Lil Moe. The State's Attorney has shown me a picture of the car I got from Lil Moe, Exhibit One. Lil Moe's real name is Mohammad. I don't know his last name or where he lives. The car Lil Moe gave me was stolen. I knew it was stolen because the steering column

was peeled. It means it was broken. I used a screwdriver to start the car. I was going to drive the car and then get rid of it.

Some time after seven p.m. I was parked on Marshfield just north of 165th Street. I was in the driver's seat. Lil Moe was in the passenger seat.

I look out the rear view mirror and saw a Markham Police car drive eastbound on 165th Street. A short time later I saw the Markham Police car drive westbound on 165th Street.

When I saw the Markham Police car I knew I had to get out of there. I did not want to get caught in a stolen car. Additionally, I had two ounces of marijuana on me.

\* \* \*

I started to drive north on Marshfield to 163rd Street. I stopped at the stop sign at 163rd and Marshfield. At the stop sign I again saw the Markham Police car.

\* \* \*

I turned right on 163rd and drove past the police car. As I was driving toward Wood Street I looked in the mirror and saw the police car make a U-turn. I turned right on Wood.

\* \* \*

Before I got to 159th and Wood I saw the police car had its emergency lights on. I did not want to get caught so I turned onto 159th Street. I drove through the red light. While on 159th Street the speed of my car was about fifty miles per hour. I then turned left on Ashland. I was still traveling at about fifty miles per hour.

When I got to the alley on Ashland I could see the police car behind me. The car had its emergency lights on.

I turned right into the alley. I drove into the alley until I could ditch the car between a garage and a pole. I then got out of the car and ran on foot. I could hear the police officer chasing me. The officer was on foot.

\* \* \*

I ran into the back yards. I ran across 155th Street and through the yards across 155th Street. Once I got into the alley behind 155th Street I threw my marijuana to the ground. I did not want to get caught with it.

\* \* \*

I then hid under a porch of a house on 155th Street. I stayed there for about ten minutes. I knew the police officer was no longer chasing me at that time."

Finally, the State presented the testimony of three police officers to testify to two prior incidents where the defendant was involved in

high-speed police chases. Chicago police officer Perkins testified that on August 26, 1997, he observed a red pickup truck run a red light at the intersection of Halsted and 95th Street. Perkins testified that he got behind the pickup and activated his car's emergency equipment. Perkins stated that the truck sped up proceeding south down Halsted. Perkins testified that the truck turned into a gas station parking lot, struck some cars in the lot, and then turned back onto Halsted. The car then pulled back into the parking lot and struck a pole. Perkins stated that the driver then exited the vehicle and began to flee eastbound down 98th Street on foot. Perkins identified defendant in court as the driver of the red pickup truck.

Chicago police officer Michel Vogenthaler testified that he responded to a radio dispatch of the chase involving Officer Perkins. Vogenthaler testified that at Halsted and 99th Street, he observed a black male exit a red pickup truck at a gas station and run eastbound across Halsted. Vogenthaler stated that he pursued the subject, first in his police car, and then on foot, along with other officers that had been called to the vicinity. Vogenthaler testified that the subject fled into a garage and was found and arrested. Vogenthaler testified that the subject made a statement that the red truck was stolen but that he did not steal it. Vogenthaler identified that subject in court as defendant.

Officer Martin Murphy testified that he is also a Chicago police officer. Murphy testified that on December 26, 1996, he observed a car driving the wrong way on a one-way street. Murphy stated that he got behind the vehicle, which turned down an alley, and activated his emergency equipment. Murphy stated that the car then accelerated to approximately 50 to 55 miles per hour. Murphy stated that this was a residential street and the conditions that evening were snowy and icy. The car drove through a stop sign without stopping. Murphy stated that the car continued two more blocks and crashed into some garbage cans, and the driver exited the car and fled. Murphy identified the driver of that car in court as defendant.

The State then rested. A defense motion for a directed finding was denied. The defense then rested without presenting evidence. At the close of all the evidence, the trial court found the defendant guilty of felony murder and sentenced him to 40 years' imprisonment. Defendant's motion for a new trial was denied.

Defendant now appeals.

## II. ANALYSIS

### A. Felony Murder Charge

■ Defendant argues that his conviction for felony murder was

improper because aggravated possession of a stolen motor vehicle (aggravated PSMV) is not a forcible felony under section 9—1(a)(3) of the Criminal Code of 1961 (Criminal Code) (720 ILCS 5/9—1(a)(3) (West 1996)). Section 9—1 of the Criminal Code states:

"(a) A person who kills an individual without lawful justification commits first degree murder if, in performing the acts which cause the death:

(1) he either intends to kill or do great bodily harm to that individual or another, or knows that such acts will cause death to that individual or another; or

(2) he knows that such acts create a strong probability of death or great bodily harm to that individual or another; or

(3) *he is attempting or committing a forcible felony other than second degree murder.*" (Emphasis added.) 720 ILCS 5/9—1 (West 1996).

Under section 2—8, a forcible felony is defined as follows:

" 'Forcible felony'. 'Forcible felony' means treason, first degree murder, second degree murder, predatory criminal sexual assault of a child, aggravated criminal sexual assault, criminal sexual assault, robbery, burglary, residential burglary, aggravated arson, arson, aggravated kidnaping, kidnaping, aggravated battery resulting in great bodily harm or permanent disability or disfigurement *and any other felony which involves the use or threat of physical force or violence against any individual.*" (Emphasis added.) 720 ILCS 5/2—8 (West 1996).

█ The primary goal in construing a statute is to ascertain and give effect to legislative intent. *People v. Bole*, 155 Ill. 2d 188, 195, 613 N.E.2d 740 (1993). This goal is best achieved by looking to the plain meaning of the statutory language. *People v. Robinson*, 172 Ill. 2d 452, 457, 667 N.E.2d 1305 (1996). Where the language is clear and unambiguous, the statute must be applied without further aids of statutory construction. *Robinson*, 172 Ill. 2d at 457. Since statutory construction is a question of law, our standard of review is *de novo*. *People v. Hart*, 313 Ill. App. 3d 939, 941, 730 N.E.2d 1202 (2000).

The trial court, in finding defendant guilty of felony murder, recognized that aggravated PSMV was not specifically enumerated under the statute. However, the trial court determined that the facts of this case brought defendant's commission of aggravated PSMV within the residuary clause "any other felony which involves the use or threat of physical force or violence against any individual" (720 ILCS 5/2—8 (West 1996)) and, hence, felony murder was applicable.

█ To prove aggravated PSMV, the State must prove that defendant: (1) operated a vehicle that he is not entitled to operate; (2) had knowledge that the vehicle was stolen; and (3) willfully failed to stop

the vehicle after a peace officer displayed his lights and sirens. 625 ILCS 5/4—103.2(a)(7)(A) (West 1996). In its findings, the trial court noted:

> "Is aggravated PSMV an inherently dangerous felony? The court will submit that it is. Burglary is an enumerated felony, but is stealing a bicycle out of a garage more serious than driving down a street in a two or three thousand pound motor vehicle and running stop lights and running stop signs at high rates of speed? Is stealing a bicycle out of a garage more serious than that? The court would submit not, and that is a forcible felony, stealing a bicycle out of a garage."

All parties agree that the felony murder doctrine is applicable to defendant only if the facts of this case bring defendant's commission of the offense of aggravated PSMV within the residuary clause of the definition of "forcible felony," to wit: "any other felony which involves the use or threat of physical force or violence against any individual." 720 ILCS 5/2—8 (West 1996).

■ This clause has been interpreted broadly to include nonviolent felonies that might require force to perpetrate. *People v. Guest*, 115 Ill. 2d 72, 101, 503 N.E.2d 255 (1986), citing *People v. Golson*, 32 Ill. 2d 398, 207 N.E.2d 68 (1965). As the State correctly points out, felonies inherently less violent than aggravated PSMV have been held as predicate offenses for felony murder when they were carried out with violence. In *People v. Golson*, 32 Ill. 2d 398, 207 N.E.2d 68 (1965), the defendant and two other men stole some mail sacks from a loading dock. As they were driving away, they were stopped by two postal inspectors. The postal inspectors were shot and killed by one of the other men. Golson was convicted of felony murder. On appeal, defendant argued that he could not be convicted of felony murder because theft from the United States mails is not a forcible felony and normally it would not involve any danger to human life. The Illinois Supreme Court held that the test to be applied in determining whether the felony murder doctrine is applicable is not whether the felony is normally classified as nonviolent, but whether, under the facts of a particular case, it is contemplated that violence might be necessary to enable the perpetrators to carry out their purpose. *Golson*, 32 Ill. 2d at 407-08.

In *People v. Banks*, 287 Ill. App. 3d 273, 678 N.E.2d 348 (1997), mob action was held to be a proper predicate offense under felony murder. The court noted that while mob action, under section 25—1(a)(1) (720 ILCS 5/25—1(a)(1) (West 1994)), involves the use of force or violence against the public peace, in that case the defendant's mob action was carried out with violence against an individual. In *People v. Greer*, 326 Ill. App. 3d 890 (2002), the appellate court affirmed

defendant's conviction for felony murder predicated on the charge of armed violence based on unlawful possession of a controlled substance. The defendant went to the victim's home to sell him cocaine. He went with a codefendant who he knew intended to demand repayment of a debt from the victim and knew the codefendant was armed with a handgun. The codefendant shot the victim after he let them in.

The felony murder doctrine was recently discussed in great detail in J. Hilliard, *Felony Murder in Illinois—The "Agency Theory" vs. The "Proximate Cause Theory": The Debate Continues*, 25 S. Ill. U. L.J. 331 (Winter 2001). " 'In the typical case of felony murder, there is no malice in "fact" with respect to the homicide, the malice is supplied by the "law." There is an intended felony and an unintended homicide. The malice which plays a part in the commission of the felony is transferred by the law to the homicide. As a result of the fictional transfer, the homicide is deemed committed with malice; and a homicide with malice is, by definition, a common-law murder.' " 25 S. Ill. U. L.J. 342, quoting 2 C. Torcia, Wharton's Criminal Law § 147, at 296-97 (15th ed. 1994).

Ultimately, the determination of whether a particular underlying felony involves the use or threat of physical force or violence is centered upon the manner in which the predicate offense is carried out. Even if we were to concede, as defendant argues, that aggravated PSMV is normally classified as nonviolent, that is irrelevant where defendant's conduct in committing aggravated PSMV *in this case* involved the use or threat of physical force or violence.

■ The facts in this case establish that defendant led Officer Laura on a high-speed chase. The audio tapes of the police chase reveal that, in Officer Laura's opinion, defendant was driving erratically. The testimony of Sanders indicated that he heard tires squealing and saw the car defendant was driving traveling at a high rate of speed. Similarly, Officer Brogdon testified that he heard car engines revving and tires squealing in the area. In addition, Officer Brogdon testified that he heard Officer Laura over the radio advise that he was getting involved in a high-speed chase. The facts establish that defendant led Officer Laura on this chase in a residential area. The facts also establish that there was strong evidence that defendant intended to commit aggravated PSMV and that a car crash was a foreseeable consequence of his actions. Evidence was introduced at trial that on August 26, 1997, and on December 26, 1996, defendant fled when the police attempted to pull him over. Both of these incidents involved defendant crashing the car he was driving and fleeing the police on foot. Therefore, the trial court properly determined that, under the facts of this case, aggravated PSMV constituted a forcible felony under section 2—8.

## B. PROXIMATE CAUSE

■ Defendant next contends that because the officer's death was the result of Officer Brogdon's actions, and not a direct result of his own actions, he cannot be charged under the felony murder statute. Defendant appears to be arguing that this court should, under a plain reading of the statute, interpret section 9—1(a)(3) under an agency theory. "Under this theory, 'the doctrine of felony murder does not extend to a killing, although growing out of the commission of the felony, if directly attributable to the act of one other than the defendant or those associated with him in the unlawful enterprise.' [Citation.]" *People v. Lowery*, 178 Ill. 2d 462, 466, 687 N.E.2d 973 (1997).

Our supreme court has unequivocally held that Illinois follows the proximate cause theory of felony murder as opposed to the agency theory. *People v. Payne*, 359 Ill. 246, 194 N.E.2d 539 (1935); *People v. Hickman*, 59 Ill. 2d 89, 319 N.E.2d 511 (1974); *People v. Dekens*, 182 Ill. 2d 247, 252, 695 N.E.2d 474 (1998). "Consistent with the proximate cause theory, liability should lie for any death proximately related to the defendant's criminal conduct." *Dekens*, 182 Ill. 2d at 252. Defendant is, therefore, subject to the felony murder doctrine if the "decedent's death is the direct and proximate result of the defendant's felony." *Dekens*, 182 Ill. 2d at 252.

Our supreme court stated in *People v. Lowery*, 178 Ill. 2d at 466-67:

> "We believe that the analogies between civil and criminal cases in which individuals are injured or killed are so close that the principle of proximate cause applies to both classes of cases. Causal relation is the universal factor common to all legal liability. In the law of torts, the individual who unlawfully sets in motion a chain of events which in the natural order of things results in damages to another is held to be responsible for it.
>
> It is equally consistent with reason and sound public policy to hold that when a felon's attempt to commit a forcible felony sets in motion a chain of events which were or should have been within his contemplation when the motion was initiated, he should be held responsible for any death which by direct and almost inevitable sequence results from the initial criminal act. Thus, there is no reason why the principle underlying the doctrine of proximate cause should not apply to criminal cases. Moreover, we believe that the intent behind the felony-murder doctrine would be thwarted if we did not hold felons responsible for the foreseeable consequences of their actions." *Lowery*, 178 Ill. 2d at 466-67.

■ In applying the proximate cause theory to the facts at hand, the question becomes whether Officer Laura's death was the direct and proximate result of the defendant's felony. Evidence was pre-

sented that defendant's conduct of fleeing from a police officer in a stolen vehicle set in motion a chain of events in which a police officer was ultimately killed. The fact that Officer Laura's death is directly attributable to Officer Brogdon's act does not alleviate defendant of culpability. "As our cases make clear, application of the felony-murder doctrine does not depend on the guilt or innocence of the person killed during the felony or on the identity of the person whose acts caused the decedent's death." *Dekens*, 182 Ill. 2d at 252.

Defendant also argues that the State failed to prove that the death of Officer Laura was the foreseeable consequence of defendant's initial criminal acts. Defendant asserts that the trial court applied a standard of strict liability, as opposed to foreseeability, in finding the defendant guilty. Defendant has failed to cite any case law to support his argument.

■ When reviewing a challenge to the sufficiency of the evidence, the reviewing court considers whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of a crime beyond a reasonable doubt. *People v. Smith*, 185 Ill. 2d 532, 541, 708 N.E.2d 365 (1999). This standard of review applies equally to bench trials. *People v. Bailey*, 311 Ill. App. 3d 265, 268-69, 724 N.E.2d 1032 (2000). It is not the function of this court on appeal to retry a defendant when considering a challenge to the sufficiency of the evidence; rather, determination of the credibility of witnesses, the weight to be given their testimony and the reasonable inferences to be drawn from the evidence are for the trier of fact. *People v. Steidl*, 142 Ill. 2d 204, 226, 568 N.E.2d 837 (1991). In a bench trial, it is presumed that the trial judge knows the law and considers only competent and admissible evidence. *People v. Williams*, 246 Ill. App. 3d 1025, 1033, 617 N.E.2d 87 (1993). Causal relationship is a question of fact that should be left to the trier of fact. *People v. Brackett*, 117 Ill. 2d 170, 177, 510 N.E.2d 877 (1987).

■ In order for a defendant to be convicted of felony murder, the decedent's death must have been the direct and proximate result of the defendant's felony. *Dekens*, 182 Ill. 2d at 252. However, "[i]t is not the law in this state that the defendant's acts must be the sole and immediate cause of death." *People v. Lowery*, 178 Ill. 2d at 471. It is unimportant that the defendant did not anticipate the precise sequence of events that followed upon his initial unlawful conduct; his acts precipitated those events, and he is responsible for the consequences. *Lowery*, 178 Ill. 2d at 470.

In *People v. Lee*, 256 Ill. App. 3d 856, 861 (1993), this court held that "[i]t is not necessary to directly prove that defendant had the intent to murder; all that needs to be shown is that defendant volun-

tarily and willfully committed an act, the natural tendency of which was to cause death or great bodily harm." In *People v. Palmer*, 162 Ill. 2d 465, 487 (1994), our supreme court held "[u]nder the felony-murder rule a person may be convicted of felony murder even though he had no intent to and even if he did not personally kill the victim." The requisite intent for the offense of felony murder is the defendant's intent to commit the underlying felony. *People v. Jeffrey*, 94 Ill. App. 3d 455, 460, 418 N.E.2d 880 (1981).

In *People v. Pugh*, 261 Ill. App. 3d 75, 634 N.E.2d 34 (1994), the court held:

"[F]orcible felonies are so inherently dangerous that a resulting homicide, even an accidental one, is strongly probable. [Citation.] Consequently, felons are responsible for those deaths which occur during a felony and which are foreseeable consequences of their initial criminal acts. [Citations.] It is immaterial whether the killing was intentional or accidental or was committed by a confederate without the connivance of the defendant or even by a third party trying to prevent the commission of or resist the felony. [Citation.] A common plan between the felon and the one whose act killed the victim certainly is not a requirement under the felony murder rule [citation], nor is there any requirement that the defendant be both the person who commits the felony and the person who performs the act which causes the victim's death [citation].*** And, the fact that the precise manner in which death occurred to a particular victim may not have been foreseen by that felon also does not relieve him of responsibility. [Citations.]" *Pugh*, 261 Ill. App. 3d at 77-78.

In Illinois, the proximate cause theory of felony murder has been interpreted broadly to even include situations where the decedent's death results from the action of the victim of the felony. In *People v. Hickman*, 59 Ill. 2d 89, 319 N.E.2d 511, a sergeant shot and killed a detective who was pursuing two suspects after they committed a burglary. The sergeant mistakenly believed that the detective was one of the fleeing suspects. The supreme court, in affirming the defendant's conviction of felony murder, reasoned that "[t]he commission of the burglary, coupled with the election by defendants to flee, set in motion the pursuit by armed police officers." *Hickman*, 59 Ill. 2d at 94. The court went on to state that the shot fired in opposition to the escape of the fleeing burglars was a direct and foreseeable consequence of defendant's actions. "Those who commit forcible felonies know they may encounter resistance, both to their affirmative actions and to any subsequent escape." *Hickman*, 59 Ill. 2d at 94.

In *People v. Lowery*, 178 Ill. 2d 462, 467, the court held that the felony murder doctrine applied even though the intended victim of the

underlying felony fired the shot that killed a bystander. They further held that the robbery victim's actions were not an intervening cause or were merely coincidental where the victim's resistance was a direct response to the defendant's criminal acts and that resistence did not break the causal chain.

Similarly, in *People v. Dekens*, 182 Ill. 2d 247, 695 N.E.2d 474, the decedent in the case was a cofelon, who was shot and killed by the victim of a robbery attempt. In affirming defendant's conviction on the charge of felony murder, the court stated that "application of the felony-murder doctrine does not depend on the guilt or innocence of the person killed during the felony or on the identity of the person whose act causes the decedent's death." *Dekens*, 182 Ill. 2d at 252. The court noted that, "[h]ere, the intended victim shot and killed the defendant's cofelon. We do not believe that the defendant should be relieved from liability for the homicide simply because of the decedent's role in the offense." *Dekens*, 182 Ill. 2d at 252.

These cases are directly analogous to the case at bar. Defendant initiated a chain of events when, while driving a stolen vehicle, he failed to stop for a signaling police officer. The decision not to stop for Officer Laura gave way to a high-speed car chase through a residential neighborhood. When defendant exited the car and began fleeing on foot, his actions caused Officer Laura to begin a foot chase. Officer Brogdon's vehicle, driving toward the scene, ultimately hit Officer Laura. This was a result of defendant's flight and was a direct and foreseeable consequence of defendant's original actions. This result was especially foreseeable to defendant because he had engaged in two other high-speed police chases which resulted in crashes shortly prior to this one.

As the holdings in *Hickman*, *Lowery* and *Dekens* illustrate, it is irrelevant that Officer Brogdon's act caused the death. The record clearly demonstrates that Officer Laura's death was a foreseeable result of defendant's actions, and therefore, defendant was properly convicted of felony murder.

After oral arguments were held in this case, we granted defendant's motion to cite additional authority, citing *People v. Belk*, 326 Ill. App. 3d 290, 760 N.E.2d 118 (2001). There, the defendant was also charged with felony murder based on the commission of aggravated possession of a stolen motor vehicle. The defendant had stolen an automobile and then fled police, driving the stolen vehicle in a commercial area at a speed approaching 100 miles per hour, and ultimately colliding with another vehicle, killing its two occupants. The defendant argued on appeal that his conviction for felony murder could not stand because aggravated possession of a stolen motor vehicle was neither a specified

forcible felony nor a felony involving the use or threat of physical force or violence. The fourth division of the First District considered the residuary clause in the definition of forcible felony (720 ILCS 5/2—8 (West 2000)) and discussed the holding in *People v. Golson*, 32 Ill. 2d 398, 207 N.E.2d 68. The appellate court noted that defendant's blood-alcohol level was 0.19 and several witnesses described his driving as "reckless." The court then held:

"Aggravated possession of a stolen motor vehicle is a felony that is not normally classified as a violent offense. That is not to say that it could never involve the use of physical force or violence. However, the law in this state mandates that we must determine from the facts of a particular case whether it was contemplated by defendant that violence might be necessary to enable him and his companion to steal the vehicle and escape arrest. For example, if the evidence showed that defendant deliberately rammed his car into that of the victims or any individual who was in the direct path of the vehicle, there would be no question that the predicate felony, *i.e.*, aggravated possession of a stolen motor vehicle, involved violence or the use of physical force against any individual.

\*\*\* In the case at bar, \*\*\* the evidence does not support an inference that defendant contemplated violence or acted intentionally when his vehicle struck that of the victims. The evidence does not support the inference that it was defendant's intent to kill or cause great bodily injury to anyone who got in his way. The circumstances of the accident appear to have been just that, an accident, albeit a very tragic one. We are hard-pressed to say that the facts of this case present a situation where the perpetrators formulated a plan to kill anyone and everyone who got in their way in the event they had to escape. The evidence is clear that defendant was determined to elude capture but not that he intended to kill anyone during the course of that chase." *Belk*, 326 Ill. App. 3d at 295.

We believe that the language in *Belk*, which focused on the defendant's lack of an intent to kill as grounds for reversal, is contrary to the legal precedent in Illinois addressing felony murder.

"Felony murder depends solely on a cause and effect relationship between the crime committed and the resulting murder to impose liability. *Dennis*, 181 Ill. 2d at 105. The object of the felony murder statute is to limit the violence that attends the commission of felonies, so that anyone engaging in that violence will be automatically subject to a murder prosecution, should a murder occur during the commission of a felony. *Dennis*, 181 Ill. 2d at 105. Whether the perpetrator intended to murder the victim during the course of a felony is irrelevant." (Emphasis omitted.) *People v. Shaw*, 186 Ill. 2d 301, 322 (1998). In *People v. Lowery*, 178 Ill. 2d at 468, the court held:

"[T]he intent of the legislature is an adherence to the proximate cause theory. Citing [*People v.*] *Payne*, [359 Ill. 246, 194 N.E.2d 539 (1935),] the committee comments to section 9—1(a)(3) state as follows:

> 'It is immaterial whether the killing in such a case is intentional or accidental, or is committed by a confederate without the connivance of the defendant *** or even by a third person trying to prevent the commission of the felony. [Citation.]' 720 ILCS Ann. 5/9—1, Committee Comments—1961, at 12-13 (Smith-Hurd 1993)." *Lowery*, 178 Ill. 2d at 468.

In a case factually similar to *Belk* and the instant case, *People v. Thomas*, 266 Ill. App. 3d 914, 641 N.E.2d 847 (1994), the defendant was driving a car containing clothing that had just been stolen by his two passengers. A high-speed police chase ensued. The defendant drove his car through a red light at a busy intersection, striking a car with two occupants, both of whom died. A jury convicted the defendant of murder based upon section 9—1(a)(2)—defendant knew his acts created a "strong probability of death or great bodily harm to that individual or another." 720 ILCS 5/9—1(a)(2) (West 1996). On appeal, defendant argued that the evidence did not support convictions for first-degree murder, but only supported convictions of reckless homicide. This court disagreed, finding that "[t]here is no question that the defendant's actions were voluntary and wilful," and held that the evidence supported the jury's verdict convicting the defendant of first-degree murder. *People v. Thomas*, 266 Ill. App. 3d at 926-27.

To be convicted of felony murder, the accused need not even know that his acts will cause death or great bodily harm to the victim. *People v. Rutledge*, 104 Ill. 2d 394, 408 (1984), citing *People v. Moore*, 95 Ill. 2d 409, 411 (1983). For these reasons, we decline to follow *Belk*.

## C. IMPLIED ACQUITTAL

▮ Defendant next argues that his felony murder conviction was improper where the trial court did not convict him of aggravated PSMV. Defendant's brief states only:

> "Since the judge was silent about the other 5 charges, including aggravated PSMV, there was an implied acquittal as to these."

Defendant's one-sentence argument in this regard is unsupported by any cited case law.

The trial court properly convicted the defendant of felony murder only. Under Illinois law, defendant could not be convicted of the predicate felony. Multiple convictions are improper if they are based on lesser included offenses. *People v. Rodriguez*, 169 Ill. 2d 183, 186, 661

N.E.2d 305 (1996). Because aggravated PSMV is a lesser included offense of felony murder in this case, the included offense of aggravated PSMV will not support a separate conviction and sentence. As the court stated in *People v. Coady*, 156 Ill. 2d 531, 622 N.E.2d 798 (1993), "defendant correctly notes that armed robbery was the offense underlying the felony murder charge and, as an included offense, will not support a separate conviction and sentence." *Coady*, 156 Ill. 2d at 537; see also *People v. Johnson*, 154 Ill. 2d 356, 370-72, 609 N.E.2d 294 (1993) (predicate felony of home invasion was a lesser included offense of felony murder requiring defendant's conviction and sentence for home invasion to be vacated); also see *People v. Flores*, 128 Ill. 2d 66, 96, 538 N.E.2d 481 (1989). Accordingly, defendant's conviction of felony murder prohibited a conviction of the predicate offense, and there was no implied acquittal of the charge of aggravated PSMV.

■ Defendant next argues that the State failed to prove all the elements of aggravated PSMV under section 4—103.2(a)(7)(A) of the Illinois Vehicle Code (625 ILCS 5/4—103.2(a)(7)(A) (West 1998)). The statute requires the peace officer to "display the vehicle's illuminated, oscillating, rotating or flashing red or blue lights, which when used in conjunction with an audible horn or siren would indicate that the vehicle is an official police vehicle." 625 ILCS 5/4—103.2(a)(7) (West 1998). Specifically, defendant maintains that the State failed to prove that Officer Laura gave any of the particular signals specified in the statute. Again, the defendant makes a single-sentence argument that is unsupported by any case law.

The trial court's finding on this issue was based on uncontradicted evidence. Both Tia Brewton and James Sanders testified that they heard sirens during the time of the police chase. Mr. Sanders additionally saw the chase, testifying that he saw flashing lights on the police car. Also, Officer Brogdon testified that he saw the Markham unit's squad lights. Defendant told Assistant State's Attorney Coyne that he "saw the police car had its emergency lights on." Based upon this evidence, we find that the trial court properly determined that it was proven beyond a reasonable doubt that Officer Laura signaled the defendant to pull over.

## D. EXCESSIVE SENTENCE

Finally, defendant argues that the trial court's sentence of 40 years' imprisonment was excessive and constituted an abuse of discretion. Defendant concedes that "while this sentence is within the allowable sentencing range," it fails to uphold the spirit and purpose of Illinois law.

■ This issue is waived by defendant's failure to object at sentenc-

ing or raise the issue in a posttrial motion. *People v. Reed*, 177 Ill. 2d 389, 393-95, 686 N.E.2d 584 (1997). As defendant did not actually kill the victim, his conviction for felony murder carries a sentencing range of not less than 20 nor more than 60 years. 730 ILCS 5/5—8—1 (West 1994). When a sentence is imposed within statutory limits, it will not be disturbed absent an abuse of discretion (*People v. Gutirrez*, 205 Ill. App. 3d 231, 564 N.E.2d 850 (1990)) or unless it is manifestly disproportionate to the nature of the offense (*People v. Cabrera*, 116 Ill. 2d 474, 508 N.E.2d 708 (1987)).

In this case defendant was sentenced to 40 years' imprisonment, clearly within the statutorily permitted range. The court considered the presentence report and the evidence adduced at trial. In addition, the record demonstrates that the trial court appropriately considered both the factors in aggravation and the factors in mitigation in its determination of defendant's sentence.

Consequently, we hold that the trial court did not abuse its discretion in sentencing the defendant to 40 years' imprisonment.

For the foregoing reasons, we affirm the defendant's conviction and sentence.

Affirmed.

GREIMAN and THEIS, JJ., concur.