(No. 81406.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. ANTONIO LOWERY, Appellee.

*Opinion filed September 25, 1997.—Modified on denial of rehearing December 1, 1997.*

James E. Ryan, Attorney General, of Springfield, and Jack O'Malley and Richard A. Devine, State's Attorneys, of Chicago (Arleen C. Anderson, Assistant Attorney General, of Chicago, and Renee Goldfarb, Kenneth T. McCurry, William D. Carroll, Mary P. Needham and Susan R. Schierl, Assistant State's Attorneys, of counsel), for the People.

Rita A. Fry, Public Defender, of Chicago (Pamela Pfrang, Assistant Public Defender, of counsel), for appellee.

CHIEF JUSTICE FREEMAN delivered the opinion of the court:

Following a jury trial in the circuit court of Cook County, defendant, Antonio Lowery, was convicted of first degree murder based on the commission of a felony (720 ILCS 5/9—1(a)(3) (West 1992)), attempted armed robbery (720 ILCS 5/18—1 (West 1992)) and two counts of armed robbery (720 ILCS 5/18—2 (West 1992)). The trial court sentenced defendant to 35 years' imprisonment for first degree murder, 20 years for each of the two armed robberies and 12 years for attempted armed robbery, to be served concurrently. On appeal, the appellate court reversed defendant's conviction and vacated his sentence for felony murder, holding that there was insufficient evidence to support defendant's

conviction. 281 Ill. App. 3d 706, 713. We granted the State's petition for leave to appeal (155 Ill. 2d R. 315(a)) and now reverse the judgment of the appellate court.

## BACKGROUND

On March 20, 1993, defendant was arrested and charged with two counts of armed robbery and one count of attempt armed robbery of Maurice Moore, Marlon Moore, and Robert Thomas. Defendant was also charged with the murder of Norma Sargent. In his statement to the police officers, defendant explained that he and his companion, "Capone," planned to rob Maurice, Marlon, and Robert. As Maurice, Marlon, and Robert walked along Leland Avenue in Chicago, defendant approached them, pulled out a gun and forced Maurice into an alley. Capone remained on the sidewalk with Robert and Marlon. Once in the alley, defendant demanded Maurice's money. Maurice grabbed defendant's gun and a struggle ensued. Meanwhile, Capone fled with Robert in pursuit. Marlon ran into the alley and began hitting defendant with his fists. As defendant struggled with Maurice and Marlon, the gun discharged. The three continued to struggle onto Leland Avenue. Upon pushing Maurice down, defendant noticed that Maurice now had the gun. Defendant then ran from the place of the struggle to the corner of Leland and Magnolia Avenues, where he saw two women walking. As he ran, he heard gunshots and one of the women scream.

Defendant continued to run, and in an apparent attempt at disguise, he turned the Bulls jacket which he was wearing inside-out. He was subsequently apprehended by the police and transported to the scene of the shooting, where Maurice identified him as the man who had tried to rob him.

At the conclusion of testimony and arguments, the jury found defendant guilty of first degree murder under the felony-murder doctrine, two counts of armed rob-

bery, and one count of attempted armed robbery. The appellate court reversed, holding that there was insufficient evidence to sustain a conviction for felony murder and remanded the cause for resentencing on defendant's armed robbery and attempted armed robbery convictions. 281 Ill. App. 3d at 713.

## ANALYSIS

At issue in this appeal is whether the felony-murder rule applies where the intended victim of an underlying felony, as opposed to the defendant or his accomplice, fired the fatal shot which killed an innocent bystander. To answer this question, it is necessary to discuss the theories of liability upon which a felony-murder conviction may be based. The two theories of liability are proximate cause and agency.

In considering the applicability of the felony-murder rule where the murder is committed by someone resisting the felony, Illinois follows the "proximate cause theory." Under this theory, liability attaches under the felony-murder rule for any death proximately resulting from the unlawful activity—notwithstanding the fact that the killing was by one resisting the crime.

*People v. Payne*, 359 Ill. 246 (1935), is exemplary of Illinois' first application of the proximate cause theory. In *Payne*, the armed robbers approached the home of two brothers. One of the brothers fired a gun, attempting to prevent the robbery, and one of the robbers also fired. The second brother was killed by the gunfire, but it could not be determined whether his brother or the robber fired the fatal shot. The court found this fact to be immaterial and confirmed the defendant's murder conviction, stating:

> "It reasonably might be anticipated that an attempted robbery would meet with resistance, during which the victim might be shot either by himself or someone else in attempting to prevent the robbery, and those attempting

to perpetrate the robbery would be guilty of murder." *Payne*, 359 Ill. at 255.

More recently, this court followed the reasoning of *Payne* in *People v. Hickman*, 59 Ill. 2d 89 (1974). In *Hickman*, a police officer killed another police officer while attempting to apprehend cofelons fleeing from the scene of a burglary. This court held that the shot that killed the police officer was in opposition to the escape of the fleeing burglars and was a direct and foreseeable consequence of defendant's actions. *Hickman*, 59 Ill. 2d at 94. See also *State v. Moore*, 580 S.W.2d 747 (Mo. 1979); *Johnson v. State*, 386 P.2d 336 (Okla. 1963).

Alternatively, the majority of jurisdictions employ an agency theory of liability. Under this theory, "the doctrine of felony murder does not extend to a killing, although growing out of the commission of the felony, if directly attributable to the act of one other than the defendant or those associated with him in the unlawful enterprise." *State v. Canola*, 73 N.J. 206, 211-12, 374 A.2d 20, 23 (1977); see *Campbell v. State*, 293 Md. 438, 440, 444 A.2d 1034, 1041 (1982); *Commonwealth v. Balliro*, 349 Mass. 505, 512, 209 N.E.2d 308, 312; *People v. Wood*, 8 N.Y.2d 48, 167 N.E.2d 736, 201 N.Y.S.2d 328 (1960); *Commonwealth ex rel. Smith v. Myers*, 438 Pa. 218, 261 A.2d 550 (1970). Thus, under the agency theory, the felony-murder rule is inapplicable where the killing is done by one resisting the felony.

Defendant offers several arguments in an attempt at avoiding application of the proximate cause theory in this case. Initially, defendant urges this court to overrule *Payne* and *Hickman*, and adopt an agency theory of felony murder. We decline to do so. We believe that the analogies between civil and criminal cases in which individuals are injured or killed are so close that the principle of proximate cause applies to both classes of cases. Causal relation is the universal factor common to all legal liability. In the law of torts, the individual who

unlawfully sets in motion a chain of events which in the natural order of things results in damages to another is held to be responsible for it.

It is equally consistent with reason and sound public policy to hold that when a felon's attempt to commit a forcible felony sets in motion a chain of events which were or should have been within his contemplation when the motion was initiated, he should be held responsible for any death which by direct and almost inevitable sequence results from the initial criminal act. Thus, there is no reason why the principle underlying the doctrine of proximate cause should not apply to criminal cases. Moreover, we believe that the intent behind the felony-murder doctrine would be thwarted if we did not hold felons responsible for the foreseeable consequences of their actions. See *Commonwealth v. Almeida*, 362 Pa. 596, 68 A.2d 595 (1949); *Commonwealth v. Moyer*, 357 Pa. 181, 53 A.2d 736 (1947).

Defendant next argues that we should abandon the proximate cause theory because Illinois originally followed the agency theory of felony murder. Notwithstanding what the law held originally, this court now holds, through *Payne* and *Hickman*, that a felon is liable for the deaths that are a direct and foreseeable consequence of his actions.

Defendant further argues that the plain and clear language of the Illinois Criminal Code of 1961 (720 ILCS 5/1—1 *et seq.* (West 1992)) requires adoption of the agency theory and that *Hickman* failed to follow the plain language of the statute in rejecting the agency theory. Defendant refers to section 9—1(a) of the Code, which states:

> "(a) A person who kills an individual without lawful justification commits first degree murder if, in performing the acts which cause the death:
>> (1) he either intends to kill or do great bodily harm to that individual or another, or knows that

such acts will cause death to that individual or another; or

(2) he knows that such acts create a strong probability of death or great bodily harm to that individual or another; or

(3) he is attempting or committing a forcible felony other than second degree murder." 720 ILCS 5/9—1(a)(1), (a)(2), (a)(3) (West 1992).

We fail to see how the plain language of the statute demonstrates legislative intent to follow the agency theory. To the contrary, the intent of the legislature is an adherence to the proximate cause theory. Citing *Payne*, the committee comments to section 9—1(a)(3) state as follows:

"It is immaterial whether the killing in such a case is intentional or accidental, or is committed by a confederate without the connivance of the defendant *** or even by a third person trying to prevent the commission of the felony. [Citation.]" 720 ILCS Ann. 5/9—1, Committee Comments—1961, at 12-13 (Smith-Hurd 1993).

Additionally, in *People v. Allen*, 56 Ill. 2d 536, 545 (1974), this court concluded that it was the intent of those who drafted the felony-murder statute to incorporate therein the holding in *Payne*. Furthermore, and contrary to defendant's view, *Hickman*, which merely follows *Payne* and *Allen*, is not inconsistent with the Code.

Defendant further argues that the plain words of the felony-murder provision demonstrate the legislature's intent that felony murder be treated like all other offenses in the Criminal Code, subject to the same defenses and limits on culpability. Again, we fail to recognize any language, express or implied, that would allow felony murder to be treated like all other offenses. It is the inherent dangerousness of forcible felonies that differentiates them from nonforcible felonies. See *People v. Golson*, 32 Ill. 2d 398, 406 (1965) (stating that "[t]he felony-murder doctrine has apparently been applied in

this State only to cases involving so-called violent felonies"). As noted in the committee comments of the felony-murder statute, "it is well established in Illinois to the extent of recognizing the forcible felony as so inherently dangerous that a homicide occurring in the course thereof, even though accidentally, should be held without further proof to be within the 'strong probability' classification of murder." 720 ILCS Ann. 5/9—1, Committee Comments—1961, at 15 (Smith-Hurd 1993). This differentiation reflects the legislature's concern for protecting the general populace and deterring criminals from acts of violence.

Defendant also contends that mechanisms other than the felony-murder statute are available for due punishment of a forcible felon where a third party murders. Specifically, defendant refers to sections 9—1(a)(1) and (a)(2) of the Code, which provide for a first degree murder conviction for an "unjustified deliberate killing" during the commission of a forcible felony. 720 ILCS 5/9—1(a)(1), (a)(2) (West 1992). However, we believe that to apply sections 9—1(a)(1) and (a)(2) to these particular facts would be in contravention of the legislature's intent to punish those responsible for accidental deaths and deaths committed by third parties that are the foreseeable consequence of a felon's act during the commission of a felony.

Based on the plain language of the felony-murder statute, legislative intent, and public policy, we decline to abandon the proximate cause theory of the felony-murder doctrine and we reaffirm the sound principles set forth in *Payne* and *Hickman*.

Because we have decided to adhere to the proximate cause theory of the felony-murder rule, we must now decide whether the victim's death in this case was a direct and foreseeable consequence of defendant's armed and attempted armed robberies. The State, relying on

*Hickman* and *Payne,* argues that defendant was liable for decedent's death because it was reasonably foreseeable that Marlon would retaliate against defendant. We agree. A felon is liable for those deaths which occur during a felony and which are the foreseeable consequence of his initial criminal acts. See *Payne,* 359 Ill. at 255; *Hickman,* 59 Ill. 2d at 93-94.

In the present case, when defendant dropped the gun and realized that Marlon was then in possession of the weapon, he believed that Marlon would retaliate, and, therefore, he ran. If decedent's death resulted from Marlon's firing the gun as defendant attempted to flee, it was, nonetheless, defendant's action that set in motion the events leading to the victim's death. It is unimportant that defendant did not anticipate the precise sequence of events that followed his robbery attempt. We conclude that defendant's unlawful acts precipitated those events, and he is responsible for the consequences. See *People v. Chandler,* 129 Ill. 2d 233, 248 (1989); *People v. Smith,* 56 Ill. 2d 328, 333-34 (1974).

Incidentally, we note that the appellate court interpreted *Hickman* as limiting the use of retaliation to the conduct of a police officer acting in the line of duty. We reject the court's narrow interpretation of *Hickman. Hickman* clearly states that "[t]hose who commit forcible felonies know they may encounter resistance, both to their affirmative actions and to any subsequent escape." *Hickman,* 59 Ill. 2d at 94. This court did not state expressly or impliedly that a robber's expectation of retaliation should be limited to police officers. *Hickman*'s reliance on *Payne,* which concerned the retaliation of an ordinary citizen, is evidence that this court did not intend to limit the use of retaliation to the conduct of an officer acting in the line of duty.

Defendant posits several unavailing arguments. He argues first that Marlon's act was an intervening cause

because it was not foreseeable that Marlon would act as a vigilante and take the law into his own hands. It is true that an intervening cause completely unrelated to the acts of the defendant does relieve a defendant of criminal liability. *People v. Brackett*, 117 Ill. 2d 170, 176 (1987). However, the converse of this is also true: when criminal acts of the defendant have contributed to a person's death, the defendant may be found guilty of murder. *Brackett*, 117 Ill. 2d at 176. It is not the law in this state that the defendant's acts must be the sole and immediate cause of death. *Brackett*, 117 Ill. 2d at 176; *Chandler*, 129 Ill. 2d at 247.

Here, we do not believe that Marlon's act of firing at defendant was intervening or coincidental. Marlon's resistance was in direct response to defendant's criminal acts and did not break the causal chain between defendant's acts and decedent's death. It would defeat the purpose of the felony-murder doctrine if such resistance—an inherent danger of the forcible felony—could be considered a sufficient intervening circumstance to terminate the underlying felony or attempted felony. *People v. Mills*, 252 Ill. App. 3d 792, 800 (1993).

Furthermore, we do not believe that Marlon acted as a vigilante, or that because of our holding, the citizenry will have license to practice vigilantism. A vigilante is defined as a member of "a group extralegally assuming authority for summary action professedly to keep order and punish crime because of the alleged lack or failure of the usual law-enforcement agencies." Webster's New World Dictionary 1583 (2d ed. 1974). Regardless of how unreasonable Marlon's conduct may, in hindsight, be perceived, his response was not based on a deliberate attempt to take the law into his own hands, but on his natural, human instincts to protect himself.

Defendant next argues that decedent's death falls

outside the scope of felony murder because it did not occur during the course of defendant's armed robbery and attempted armed robbery. In support, he relies on section 7—4 of the Code, which states that justifiable use of force is not available to a person who:

> "(c) Otherwise initially provokes the use of force against himself, unless:
> ***
>
>> (2) In good faith, he withdraws from physical contact with the assailant and indicates clearly to the assailant that he desires to withdraw and terminate the use of force, but the assailant continues or resumes the use of force." 720 ILCS 5/7—4(c)(2) (West 1992).

Defendant maintains that he had "overtly retreated" from physical contact with Marlon and that Marlon's pursuit of defendant constituted a new conflict. The State, on the other hand, argues that defendant's election to flee fell within the commission of the armed and attempted armed robberies.

We must agree with the State. This court has consistently held that when a murder is committed in the course of an escape from a robbery, each of the conspirators is guilty of murder under the felony-murder statute, inasmuch as the conspirators have not won their way to a place of safety. *People v. Smallwood*, 102 Ill. 2d 190, 195 (1984); *Hickman*, 59 Ill. 2d at 94; *People v. Golson*, 32 Ill. 2d 398, 408 (1965); *Allen*, 56 Ill. 2d at 541; *People v. Johnson*, 55 Ill. 2d 62 (1973); *People v. Bongiorno*, 358 Ill. 171, 173 (1934).

Defendant asserts that he had reached a place of "legal safety" when he ran. We disagree. Defendant was attempting to escape when Marlon fired the shots at him. Apparently, defendant also did not believe he had "won a place of safety" as evidenced by his own act of turning his coat inside-out to avoid detection before the police arrested him. Therefore, decedent's death falls within the scope of the felony-murder doctrine.

Defendant's final contention that Marlon was not legally justified in firing at defendant is misplaced. There is no claim that Marlon shot at defendant in self-defense or in an attempt to arrest him. Moreover, the proper focus of this inquiry is not whether Marlon was justified in his actions, but whether defendant's actions set in motion a chain of events that ultimately caused the death of decedent. We hold that defendant's actions were the proximate cause of decedent's death and the issue of whether Marlon's conduct was justified is not before this court.

In conclusion, we hold that the evidence was sufficient to prove defendant guilty beyond a reasonable doubt under the felony-murder rule as codified in section 9—1(a)(3) of the Criminal Code. 720 ILCS 5/9—1(a)(3) (West 1992). We therefore reverse the appellate court. In reversing defendant's conviction outright, the appellate court did not reach several of his arguments on appeal. See 281 Ill. App. 3d at 713. While defendant did not raise these issues in this court, where trial errors were raised but not ruled upon in the appellate court, it is appropriate for this court to remand the cause to the appellate court for resolution of those remaining issues. See *Suwalski v. Suwalski*, 40 Ill. 2d 492, 500-01 (1968). Accordingly, we remand the cause to the appellate court for consideration of defendant's remaining issues.

*Appellate court judgment reversed;*
*cause remanded.*