SECOND DIVISION

No. 1-05-1470

THE PEOPLE OF THE STATE OF ILLINOIS,    ) Appeal from the
                                        ) Circuit Court of
          Plaintiff-Appellee,           ) Cook County.
                                        )
          v.                            ) No. 03 CR 00969
                                        )
CLINTON MOORE,                          ) Honorable
                                        ) Joseph Kazmierski,
          Defendant-Appellant.          ) Judge Presiding.

     JUSTICE HALL delivered the opinion of the court:

     The defendant, Clinton Moore was charged by indictment with first degree murder (720 ILCS 5/9-1(a)(1), (a)(2) (West 2002)), first degree murder while committing a forcible felony (aggravated possession of a stolen motor vehicle) (720 ILCS 5/9-1(a)(3) (West 2002)), first degree murder while committing a forcible felony (burglary) (720 ILCS 5/9-1(a)(3) (West 2002)), aggravated possession of a stolen motor vehicle (625 ILCS 5/4-103.2(a)(7)(A) (West 2002)), burglary (720 ILCS 5/19-1(a) (West 2002)), and possession of burglary tools (720 ILCS 5/19-2 (West 2002)).  The charges stemmed from a collision in which a stolen vehicle driven by the defendant collided with a vehicle driven by Jerry Love.  At the time of the collision, the defendant was being pursued by the police.  Mr. Love died as a result of the collision.

     Following a jury trial, the defendant was found guilty of felony murder and burglary.  The trial court imposed concurrent sentences of 30 years' and 7 years' imprisonment on the felony murder and burglary convictions, respectively.  This appeal followed.

     On appeal, the defendant contends that the offense of burglary was complete prior to the police chase, and therefore, he was not guilty of felony murder.  We agree and reverse the defendant's felony murder conviction.

     The evidence at trial established the following facts.  On November 24, 2002, Richard Abolins discovered that his tan 1984 Buick Century automobile was missing from where he had parked it earlier that day.  He reported the

missing Buick to the police. He had not given anyone permission to drive the Buick. On November 25, 2002, Chicago police officers, Stack and Conway, were on patrol in an unmarked police vehicle when they responded to a message regarding two black males with a gun in a gray Oldsmobile Cutlass. Proceeding to the scene, Officer Stack believed he spotted the Oldsmobile at Cicero Avenue and began to follow it. A check of the license plate revealed that the suspect vehicle had been stolen. Activating their vehicle's oscillating headlights and siren, the officers pursued the suspect vehicle.

As the chase continued, 5 to 10 police vehicles joined in the pursuit. The cars proceeded through stop signs and the wrong way down one-way streets. At Kostner Avenue and Madison Street, a marked police car, driven by Officer Dorsey, took the lead as the pursuit continued. The suspect vehicle proceeded through a red light at Pulaski Avenue and Madison Street, striking a red Hyundai on the driver's door. As a result of the collision, Mr. Love, the driver of the Hyundai, was killed. The driver of the suspect vehicle, later identified as the defendant, fled on foot but was apprehended by police.

Following the accident, Officer Stack observed that the vehicle he had been pursuing was actually a tan Buick. The Buick's steering column had been "peeled," meaning that the plastic around it had been broken, and there was a screwdriver on the front seat. Officer Dorsey detained Misty McQueen, the defendant's passenger. According to Officer Dorsey, the keys to the Buick were in the ignition. The tan Buick was later determined to be Mr. Abolins's Buick.

According to Ms. McQueen, on November 24, 2002, she saw the defendant sitting in a tan Buick parked at Rockwell Gardens.[1] On November 25, 2002,

---

[1]At the time of her testimony, Ms. McQueen was in custody on

she again saw the tan Buick parked at the Rockwell Gardens; the defendant was sitting in the driver's seat of the Buick. She asked him for a ride to buy drugs. When they arrived at their destination, a police car pulled up with its blue light flashing. The defendant hit the accelerator, and a chase began. When Ms. McQueen asked him to slow down so she could get out, the defendant refused saying there was a warrant out for him. She did not recall telling the grand jury that the defendant stated that the Buick was stolen but conceded that she must have done so. The defendant was driving approximately 70 miles per hour when they reached Kostner Avenue. As the defendant approached the intersection of Pulaski Avenue and Madison Street, the light turned red for him, and a red Hyundai entered the intersection. The Hyundai was in the middle of the intersection when the Buick collided with it.

After the defendant waived his Miranda rights, he was questioned by Detective David March. The defendant acknowledged driving the tan Buick that was involved in the collision. He did not know who owned the Buick. He had gotten the Buick from a friend of his, known only as "Slick." The defendant noticed that the steering column had been peeled. He had to use a screwdriver to start the vehicle so he assumed it was stolen. While driving with Ms. McQueen, he noticed an unmarked police vehicle behind him. After police activated their lights and the defendant realized they were after him, he attempted to escape because he believed there was a warrant out for him for parole violations. He was aware there was a traffic signal at the Pulaski Avenue and Madison Street intersection, but he did not look to see if it was red or green; he just sped through it. The defendant did not know how fast he was going. Following the crash, he tried to flee but was apprehended by

drug charges.

No. 1-05-1470

police.

Detective March acknowledged that the defendant told him that he had permission from Slick to drive the Buick. However, the detective denied that the defendant told him the steering column of the Buick had been peeled when the Buick was stolen from Slick. The defendant's statement was not reduced to writing.

Following the close of all the evidence, defense counsel requested that the jury be instructed on the offense of reckless homicide, and the trial court agreed. In response, the State elected to dismiss all remaining charges but the felony murder based on the commission of a burglary and the burglary counts.[2] The defendant's motion for a mistrial was denied. The reckless homicide instruction was not given.

The jury returned a verdict finding the defendant guilty of first degree murder and burglary. Following the denial of the defendant's motion for a new trial, the trial court sentenced the defendant to 30 years' imprisonment for first degree murder and 7 years' imprisonment for burglary and ordered the sentences to run concurrently. Following the denial of his motion to reconsider sentence, the defendant filed a timely notice of appeal.

ANALYSIS

Sufficiency of the Evidence of Felony Murder

I. Standard of Review

When a court is faced with a challenge to the sufficiency of the evidence, the relevant inquiry is whether, after viewing the

_____

[2]Prior to trial, the State dismissed the felony murder count based on aggravated possession of a stolen motor vehicle, based on People v. Belk, 203 Ill. 2d 187, 784 N.E.2d 825 (2003).

4

No. 1-05-1470

evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. People v. Campbell, 146 Ill. 2d 363, 374, 586 N.E.2d 1261 (1992). This standard applies in all cases, regardless of whether the evidence is direct or circumstantial. Campbell, 146 Ill. 2d at 374-75. The reviewing court will not substitute its judgment for that of the fact finder on questions involving the weight of the evidence or the credibility of the witnesses and will not reverse a criminal conviction unless the evidence is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of the defendant's guilt. Campbell, 146 Ill. 2d at 375.

## II. Discussion

The indictment in this case charged the defendant with committing the offenses of first degree murder and burglary on or about November 25, 2002. A person commits first degree murder when he "kills an individual without lawful justification *** if, in performing the acts which cause the death: he is attempting or committing a forcible felony." 720 ILCS 5/9-1(a)(3) (West 2002). In the instant case the forcible felony was the burglary. See Belk, 203 Ill. 2d at 193; 720 ILCS 5/2-8 (West 2002). A person commits the offense of burglary when "without authority he knowingly enters or without authority remains within a *** motor vehicle *** or any part thereof, with intent to commit a felony or theft." 720 ILCS 5/19-1 (West 2002).

The defendant maintains that his conviction for felony murder based on the burglary of the Buick must be reversed because he had reached a place of

5

No. 1-05-1470

temporary safety prior to the police chase in which Mr. Love was killed. The State responds that the defendant never reached a place of temporary safety because: (1) the defendant was simultaneously committing and in the process of escaping from the November 24, 2002, burglary at the time of the November 25, 2002, collision with Mr. Love's Hyundai; or (2) the defendant committed a second burglary of the Buick on November 25, 2002, and was in the process of escaping at the time of the collision with the Hyundai.

The offense of burglary is complete when the illegal entry is made with the requisite intent. See People v. Sansone, 94 Ill. App. 3d 271, 273-74, 418 N.E.2d 862 (1981) ("the crime of burglary was complete upon showing the defendant's entry without authority with the intent to steal, and it was not essential to prove that anything was actually taken"). Nonetheless, the State maintains that the defendant was still committing the November 24, 2002, burglary of the Buick when Mr. Love was killed. The State reasons that the November 24, 2002, burglary of the Buick was ongoing since the defendant never relinquished possession of the Buick between the time he took the Buick on November 24, 2002, until the collision with Mr. Love's Hyundai.

The State's argument draws an unnecessary distinction between the completion of the offense of burglary in this case and the escape from it. In Illinois, "liability attaches under the felony-murder rule for any death proximately resulting from the unlawful activity." People v. Lowery, 178 Ill. 2d 462, 465, 687 N.E.2d 973 (1997). "A felon is liable for those deaths which occur during a felony and which are the foreseeable consequence of his initial criminal acts." Lowery, 178 Ill. 2d at 470; see also People v. Nixon, 371 Ill. 318, 20 N.E.2d 789 (1939) (the supreme court upheld the defendant's felony murder conviction where the victim was killed after the defendant entered her residence to commit a theft).

6

Illinois courts have held that "[a] killing that occurs during the course of an escape from a forcible felony is within the operation of the felony-murder rule." People v. Klebanowski, 221 Ill. 2d 538, 549, 852 N.E.2d 813 (2006); see People v. Hickman, 59 Ill. 2d 89, 94, 319 N.E.2d 511 (1974) (the period of time and activities involved in escaping to a place of safety are part of the crime itself). The felony-escape rule was explained in People v. Bongiorno, 358 Ill. 171, 192 N.E.2d 856 (1934), as follows:

"It is also a recognized principle of law that where two or more persons are engaged in a conspiracy to commit robbery and an officer is murdered while in immediate pursuit of either or both of the offenders who are attempting escape from the scene of the crime with the fruits of the robbery, either in possession of one or both, the crime of robbery is not complete at the time of the murder, inasmuch as the conspirators had not then won their way, even momentarily, to a place of temporary safety, and the possession of the plunder was nothing more than a scrambling possession." Bongiorno, 358 Ill. at 173.

Therefore, we must determine whether at the time of the collision, the defendant was in the process of escaping from the commission of the burglary as the State maintains or, as the defendant maintains, had reached a place of temporary safety.

The State argues the fact that the defendant was not being pursued by the police on the evening of November 24, 2002, does not imply that he had reached a place of safety because there is no evidence that the police were pursuing him.

We disagree. In People v. Johnson, 55 Ill. 2d 62, 302 N.E.2d 20 (1973), the defendant participated in the robbery of a tavern. After taking the money, the defendant and the other robber left. However, the other robber

returned a few seconds later and shot the victim. The defendant was found guilty of felony murder because he and the other robber had not yet won their way to a place of safety at the time the victim was killed. Johnson, 55 Ill. 2d at 69. The determination that the defendant had not reached a place of temporary safety was not based on the lack of a police chase. Therefore, we reject the State's argument that reaching a place of temporary safety requires a police chase.

We believe the evidence established that the defendant had reached a place of safety prior to the collision in which Mr. Love was killed. First, the evidence established that the Buick was taken on November 24, 2002. While there was no direct evidence that the defendant took the Buick from the location where Mr. Abolins parked it, Ms. McQueen testified that on November 24, 2002, she saw the defendant seated in the Buick parked at the Rockwell Gardens. Ms. McQueen further testified that on November 25, 2002, she again saw the defendant seated in the Buick at Rockwell Gardens. The evidence establishes that for almost 24 hours, the defendant had enjoyed the use of the stolen Buick, unmolested by the police. These facts distinguish this case from, Hickman, Johnson and Bongiorno in which the courts applied the felony-murder escape rule.

In reaching our determination, we find State v. Pierce, 23 S.W.3d 289 (Tenn. 2000), to be instructive. While fleeing from police in a van he had stolen 20 days before, the defendant collided with a police vehicle, killing a deputy.[3] The defendant was found guilty of felony murder. On appeal, the

---

[3]The facts in Pierce are somewhat complicated. The van was initially stolen by the owners' daughter, Sarah. Sarah, along with the defendant and his girlfriend, April Worley, had been

8

reviewing court noted that, in determining whether a killing was "in perpetration of" a felony, courts have considered whether the killing and the felony were closely related in time, place, causation and continuity of action. Pierce, 23 S.W.3d at 294. If the felony and killing occur as part of a continuous criminal transaction, the felony-murder rule applies. Pierce, 23 S.W.3d at 294. However, where there is a break in the chain of events between the felony and the killing, the felony-murder rule does not apply. Pierce, 23 S.W.3d at 295. One of the most important factors to consider in determining whether there has been a break in the chain of events is whether the felon has reached a place of temporary safety. Pierce, 23 S.W.3d at 295.

With regard to the last factor, the court noted as follows:

"In this case, the appellant reached a place of temporary safety when he arrived and resided in the Bristol, Virginia area for twenty days prior to the killing. The appellant was not being actively and continuously pursued by police during this time, nor was he attempting to hide from the police. Indeed, he, along with Worley and Sarah, were daily driving the stolen vehicle to various cities in Tennessee. Clearly, they had reached a place of safety before the killing occurred. While there was an attenuated causal connection between the initial taking of the vehicle and the killing since the appellant was attempting to evade arrest for theft of the vehicle when the collision occurred, this

_____

passengers in the van together with Sarah's parents. Due to an argument, Sarah drove off in the van leaving her parents behind. She thereafter requested that the defendant take over the driving. Some 20 days later, the crash occurred when police pursued the stolen vehicle.

9

tenuous causal connection was insufficient in light of the fact that the

killing was completely unconnected to the initial taking of the vehicle

in time, place, and continuity of action." Pierce, 23 S.W.3d at 297.[4]

The court concluded that the evidence was insufficient to support the

defendant's conviction for felony murder. Pierce, 23 S.W.3d at 297.

People v. Gillis, 474 Mich. 105, 712 N.W.2d 419 (2006), relied on by the

State, is distinguishable. In that case, the defendant committed a home

invasion and then drove away. The homeowner alerted police. Spotting the

defendant's car, a state trooper gave chase. The defendant's car collided

with another vehicle, killing the occupants. The collision occurred 18

minutes after the home invasion was reported. The defendant was found guilty

of felony murder which, under Michigan law, required that the murder be

committed in the perpetration of or attempt to perpetrate the home invasion.

The Gillis court concluded that the defendant was "in perpetration of"

the home invasion at the time the collision resulting in the deaths occurred.

In reaching that conclusion, the court found that the jury could reasonably

infer from the defendant's actions that he was aware that the homeowner had

spotted him at the scene of the home invasion and could properly consider this

inference as evidence that the defendant had not truly reached a point of

temporary safety. Gillis, 474 Mich. at 134 n.15, 712 N.W.2d at 436.

In contrast to Gillis, the jury in this case could not reasonably infer

from the evidence that the defendant was in the process of escaping from the

police as he sat in the Buick at the Rockwell Gardens on November 24, 2002.

Both the defendant and the Buick were seen on that date by Ms. McQueen,

---

[4]For some unexplained reason, the court remanded the case

for a new trial. Pierce, 23 S.W.3d at 297.

indicating that the defendant had made no attempt to conceal himself or the Buick from anyone, including the police.

The State then argues that the defendant was escaping from the November 25, 2002, burglary of the Buick. The State maintains that each time the defendant entered the Buick, he committed a new burglary. In support of its argument, the State relies on the dissent in People v. Duncan, 261 Ill. App. 3d 957, 634 N.E.2d 13 (1994) (McCuskey, J., dissenting), and People v. Washington, 50 Cal. App. 4th 568, 57 Cal. Rptr. 2d 774 (1996).

We need not address those cases because, even if the defendant committed a second burglary when he reentered the Buick on November 25, 2002, the evidence establishes that the defendant had reached a place of temporary safety prior to the collision with Mr. Love. When Ms. McQueen observed the defendant on November 25, 2002, he was seated in the Buick in plain sight, making no attempt to hide. There was no evidence of how long the defendant had been seated in the Buick before Ms. McQueen arrived. Moreover, the fact that the defendant felt secure enough to assist Ms. McQueen and drove the Buick to make a drug purchase established that he had reached a place of temporary safety.

The State argues that parking the Buick on a public street does not establish that the defendant reached a place of temporary safety, relying on People v. Steppan, 105 Ill. 2d 310, 473 N.E.2d 1300 (1985). Steppan is distinguishable. In that case, the owner observed two men in his vehicle, which was parked on the street. The defendant and his companion were arrested as they exited the vehicle. In contrast, the defendant entered and sat in the Buick for an undetermined amount of time prior to Ms. McQueen's request for a ride to buy drugs. In addition, the fact that the defendant felt secure enough to agree to such an errand established that he had reached a place of

11

No. 1-05-1470

temporary safety.

Inasmuch as the evidence established that the defendant had reached a place of temporary safety, we conclude that the evidence was insufficient to prove the defendant guilty of felony murder based upon the burglary in this case. Therefore, the defendant's conviction for felony murder and the sentence imposed thereon are reversed. The defendant's conviction and sentence for burglary are affirmed. Deciding this case as we do, we need not address the remaining issues raised by the defendant.

Reversed in part and affirmed in part.

WOLFSON, P.J., and SOUTH, J., concur.

12