2016 IL App (2d) 131345
No. 2-13-1345
Opinion filed February 10, 2016

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Winnebago County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 11-CF-2763 |
| BRANDON LEWIS SAGO, | ) ) ) | Honorable Gary V. Pumilia, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE JORGENSEN delivered the judgment of the court, with opinion.
Justices Hutchinson and Hudson concurred in the judgment and opinion.

**OPINION**

¶ 1    In this direct appeal of his first-degree murder (felony murder) conviction (720 ILCS 5/9-1(a)(3) (West 2010)), defendant, Brandon Lewis Sago, argues only that the trial court erred in instructing the jury about an off-duty police officer's status as a peace officer and his right to use force. For the following reasons, we affirm.

¶ 2                                I. BACKGROUND

¶ 3    On October 1, 2011, at approximately 10:30 p.m., three individuals, including defendant, all with their faces covered, entered Marie's Pizza in Rockford. One of the individuals, later

identified as Lamar Coates,[1] pointed a gun at the restaurant owner, Vincent Tarara, and demanded money. Defendant and Desmond Bellmon stood behind Coates. Tarara argued with Coates, who continued to demand money and pushed the gun to Tarara's forehead. Coates was very angry and aggravated. Coates pushed the gun into Tarara's chest, and Tarara stepped backward. Coates then turned around and pointed the gun at the head of a customer, Frank Pobjecky, who was an off-duty Winnebago County sheriff's deputy. Pobjecky had been watching television while waiting for a pizza. Tarara asked Coates to calm down and said that he would get the money. Coates lowered the gun, and Tarara grabbed it. The two men fell to the floor. Defendant and Bellmon joined the struggle to retrieve Coates's gun.

¶ 4 Pobjecky testified that, when the gun was pointed at him, he knew instantly that his life was in danger. "I mean, at any moment I was just expecting to be shot in my face." Pursuant to his police training, Pobjecky assessed the situation as one of "deadly threat." Pobjecky did not have his service weapon on his person. However, he had known Tarara for around five years, and he knew that Tarara often wore a holstered firearm concealed under his shirt. When Tarara grabbed Coates's gun and a struggle ensued, Pobjecky lifted Tarara's shirt and retrieved Tarara's gun from its holster. One of the intruders charged toward Pobjecky, while the other two continued to fight Tarara for Coates's weapon. Pobjecky fired two shots at the individual charging him. Pobjecky did not, at that point, know who possessed Coates's gun, so, he testified, he viewed everyone in the restaurant as a deadly threat and had to suspect that everyone was armed. The other suspects were moving around, and he fired the gun in their direction. While

---

[1] Coates was tried and convicted separately. In *People v. Coates*, 2015 IL App (2d) 130762-U, this court affirmed his conviction, rejecting virtually the identical argument raised herein.

engaged with the assailants, a fourth assailant, later identified as Michael Sago, Jr. (hereinafter Sago; apparently, defendant's cousin), entered the restaurant. Pobjecky was concerned about the possible existence of assailants outside of the restaurant. He did not know how many times he fired the gun or whether he had hit anyone, but he discharged all of the bullets. Ultimately, Sago was shot three times and died at the scene. Pobjecky testified that, between 2002 and 2006, he served two combat tours in Iraq and had been confronted with deadly force there; however, he said, the October 1, 2011, incident was "the closest I've been to death, ever."

¶ 5    At trial, defendant repeatedly suggested that he was not guilty of felony murder because Pobjecky's conduct was excessive and not a reasonably foreseeable consequence of the attempted robbery. For example, in opening, defendant asserted that the evidence would show that Pobjecky "gunned down" Sago. On cross-examination, defense counsel examined with Pobjecky the surveillance video of the shooting, asking whether Pobjecky agreed that, when he shot at them, the assailants appeared to be "fleeing" or moving toward the door. Counsel presented Pobjecky with a copy of the "Winnebago County Sheriff's Department Standard Operating Procedures" and questioned him about the use-of-force guidelines therein, suggesting that, because the suspects appeared to be heading toward the door, Pobjecky used more force than necessary for the scale of the threat. In closing, he again argued that Pobjecky's actions were not warranted or justified, because the evidence showed that Sago was shot in the back and was leaving when he died. He argued that Pobjecky, as an off-duty police officer, should have practiced some restraint and that his actions were not the "calculating actions of a trained police officer." Counsel told the jury that, based on Pobjecky's testimony on cross-examination, it was clear that he did not follow the sheriff department's use-of-force protocol and that he exceeded

the force appropriate for the situation. As such, his actions could not have been reasonably foreseeable.

¶ 6    In contrast, the State tried to refocus the jury's attention on defendant's actions. For example, in closing, the State argued:

> "So don't get sidetracked. Stay focused, because this is People vs. Brandon Sago. This is not about Frank Pobjecky's actions other than doing the duty of a law enforcement officer when he found himself in the middle of an armed robbery. He wasn't even carrying his service revolver. He's off duty, technically, but he's never off duty officially, because he's a police officer."

Further, the State noted that Pobjecky did not intend to wear "two hats" that night. "He finds himself in the middle of something [and] he has to[,] as a sworn peace officer[,] take action to preserve the peace, and that's what he tried to do." Finally, the State argued that the jury should disregard defendant's argument that Pobjecky's actions broke the chain of events and thus were not reasonably foreseeable:

> "Their co-confederate in crime was killed during the course of a forceful felony. And he knows that it was foreseeable because they went there with a loaded gun. *** You have the loaded gun for a reason. You have it because you're going to use it if you encounter resistance. And when you take that risk ***. *** It's a possibility that somebody might be killed. Somebody might get shot. Somebody might die as a result of the chain of events you set in motion. And that's what happened here."

¶ 7    The court provided the jury with two instructions relevant to this appeal. First, Illinois Pattern Jury Instructions, Criminal, No. 4.08 (4th ed. 2000) (hereinafter, IPI Criminal 4th), defines a "peace officer" as:

"Any person who, by virtue of his office or public employment, is vested by law with a duty to maintain public order or to make arrests for offenses, whether that duty extends to all offenses or is limited to specific offenses."

Defendant objected only that the instruction was not relevant. The court disagreed.

¶ 8     Second, IPI Criminal 4th, No. 24-25.12 provides:

"A peace officer need not retreat or desist from efforts to make a lawful arrest because of resistance or threatened resistance to the arrest. He is justified in the use of any force which he reasonably believes to be necessary to effect the arrest or to defend [himself or another] from bodily harm while making the arrest.

However, *he is justified in using force likely to cause death or great bodily harm only when he reasonably believes that such force is necessary to prevent*

[1] *death or great bodily harm to* [*himself or another*]

[*or*]

[2] *the arrest from being defeated by resistance or escape and the person to be arrested has committed or attempted* [*armed robbery*] *which involves the infliction or threatened infliction of great bodily harm.*

[*or*]

[3] the arrest from being defeated by resistance or escape and the person to be arrested is attempting to escape by use of a deadly weapon or otherwise indicates that he will endanger human life or inflict great bodily harm unless arrested without delay." (Emphasis added.)

¶ 9    Defendant objected only that the instruction was already covered by other self-defense instructions (which were given over his objection that they were not applicable). The court disagreed.

¶ 10    The jury convicted defendant of felony murder. The court sentenced defendant to 37 years' imprisonment and denied his motion for a new trial. Defendant appeals.

¶ 11                                II. ANALYSIS

¶ 12    Defendant argues that the trial court erred in providing the jury with IPI Criminal 4th, Nos. 4.08 and 24-25.12. Defendant notes that Pobjecky was not wearing a police uniform, did not identify himself as a police officer, did not attempt to arrest any of the armed-robbery suspects, and did not order the suspects to submit to police authority. Further, defendant notes that Pobjecky's status as a police officer was not an element of the offenses with which defendant was charged. Accordingly, defendant argues, the instructions tended to confuse and mislead the jury by permitting it to consider a peace officer's right to use deadly force and "impermissibly shifting their focus from a determination of proximate causation of the *defendant's* actions surrounding [Sago's] death to a consideration of the reasonableness of Pobjecky's actions." Defendant argues that the instructions suggested to the jury that, if Pobjecky acted reasonably as a peace officer, his actions could not have broken the chain of foreseeability and proximate causation required to sustain a conviction of first-degree felony murder. We reject defendant's arguments.

¶ 13    Jury instructions convey the legal rules applicable to the evidence and guide the jury toward a proper verdict. *People v. Mohr*, 228 Ill. 2d 53, 65 (2008). Instructions should not be given if they are not supported by either the evidence or the law. *Id.* We review for an abuse of discretion a trial court's determination that there is "some evidence" justifying an instruction. *Id.*

¶ 14   Here, the trial court did not abuse its discretion in determining that "some evidence" justified giving the jury instructions at issue.  The trial court could have reasonably determined that it was appropriate to inform the jury of the standards for deciding whether Pobjecky, as a police officer, reacted properly in trying to prevent the robbery and to protect the safety of himself and others.  Indeed, defendant repeatedly argued that Pobjecky's actions were inappropriate and excessive and that therefore Sago's death at the hands of Pobjecky was not foreseeable.  Thus it was clearly no abuse of discretion for the trial court to instruct the jury that an officer could, as a matter of law, react with deadly force to prevent death or great bodily harm to himself or others.  The facts that Pobjecky was not in uniform and did not announce himself as an officer or try to effectuate an arrest, or that defendant was not charged with a crime of which the status of a police officer is an element, are, in our view, irrelevant.  Defendant put at issue the reasonableness of Pobjecky's actions, for he was trying to establish that the actions were so outrageous that they were not reasonably foreseeable.  Therefore, it was not an abuse of discretion for the trial court to provide instructions clarifying those actions.

¶ 15   Further, defendant argues that, as a result of the instructions, the jury might have been misled, confused, or distracted away from focusing on defendant's actions to considering instead the reasonableness of Pobjecky's actions.  First, we note that he points to nothing in the record to support such an inference.  Second, as noted above, we suspect that this is exactly what defendant *hoped* would happen.  Indeed, it was *defendant* who repeatedly challenged Pobjecky's actions to draw attention away from his own causal link to the murder.  See *People v. Lowery*, 178 Ill. 2d 462, 465 (1997) (liability for felony murder attaches for deaths proximately caused by the defendant's forcible felony).  The State, in contrast, reminded the jury to stay focused and to remember that it was charged with assessing only whether Sago's death was foreseeable in light

of the chain of events defendant and his accomplices set in motion. In sum, there was no abuse of discretion, and we reject defendant's arguments.

¶ 16                                  III. CONCLUSION

¶ 17     For the reasons stated, we affirm the judgment of the circuit court of Winnebago County. As part of our judgment, we grant the State's request that defendant be assessed $50 as costs for this appeal. 55 ILCS 5/4-2002(a) (West 2014); see also *People v. Nicholls*, 71 Ill. 2d 166, 179 (1978).

¶ 18     Affirmed.